**Randal N. WIIDEMAN, Plaintiff,**

v.

**Ron ANGELONE, et al., Defendants.**

**No. CV–N–93–132–ECR.**

United States District Court,
D. Nevada.

March 24, 1994.

Randal N. Wiideman, in pro. per.

Frankie Sue Del Papa, Atty. Gen. by Marc P. Cardinalli, Deputy Atty. Gen., Crim. Justice Div., Carson City, NV, for defendants.

## MEMORANDUM DECISION AND ORDER

EDWARD C. REED, Jr., District Judge.

Plaintiff commenced this civil rights action alleging that Defendants violated his constitutional right to assist other inmates with their legal affairs and the confiscation of his typewriter, both as a means of retaliation against him. Both parties have moved for summary judgment (# 13 & # 39). Defendants included within their answer (# 5) a counterclaim (erroneously listed as a cross-claim) seeking declaratory and injunctive relief. Plaintiff has filed a motion to dismiss (# 13) the counterclaim and several requests for injunctive relief (## 24, 44 & 51). Further, numerous miscellaneous motions are also pending. This order will dispose of these matters in reverse order.

### MISCELLANEOUS MOTIONS

Plaintiff opposed Defendants' counterclaim with a motion to dismiss, which he incorporated with his motion for summary judgment (# 13). Plaintiff has filed a second motion to dismiss (# 55), which Defendants seek to have stricken (# 57) arguing that it is redundant. Plaintiff has also filed a document styled a motion for finding of retaliation (# 44A), which Defendants have opposed with a motion to strike (# 58). The document is redundant to the request for summary judgment as well as the motions for preliminary injunction. Lastly, Defendants have moved to strike an affidavit submitted by Plaintiff represented as being from Dianne Watson but which is not signed nor has a signed copy been filed. Defendants' motions to strike (## 57, 58 & 65) shall be granted.

Plaintiff has filed a motion for declaratory judgment (# 64) on the same basis as his motion for summary judgment. Because the latter is redundant, it shall be denied.

Lastly, Defendants have filed two motions for sanctions (# 28 & # 52). The substance of each are interwoven with the relief Defendants seek in their counterclaim. Accordingly, to grant the separate motions would be redundant. If, however, Defendants do not prevail on their counterclaim, then they should refile the separate motions.

### MOTIONS FOR PRELIMINARY INJUNCTIONS

Plaintiff filed a motion for preliminary injunction (# 24), which he has renewed twice (# 44 & # 51). Defendants moved to strike (# 29) the motion because Plaintiff refused to serve on them copies of the exhibits attached to the motion. It is clear from the record that Plaintiff has subsequently served Defendants with the necessary exhibits. Accordingly, the motion is moot.

In each of Plaintiff's request for injunctive relief, he seeks the same relief to which he would be entitled should he prevail on his motion for summary judgment (# 13). Necessarily then, the expedited injunctive relief requires a determination of the same issues as are required to decide the motion for summary judgment. None of the motions make the required showing that Plaintiff is being harmed pending a determination of the merits of the underlying complaint. Accordingly, to the extent that the renewals are construed as separate motions, each shall be

denied. For the same reasons Plaintiff's motions for a LR 140–6 order (# 42) and to show cause (# 44) shall be denied.

### MOTION TO DISMISS

Plaintiff commenced this civil rights action against Defendants alleging that they violation his constitutional rights while acting under color of law. Defendants filed an answer to the complaint, which included a counterclaim. Plaintiff has filed a motion to dismiss (# 13) the counterclaim, arguing that it is invalid because he has not acting under color of law. The counterclaim is not, however, asserting a cause of action based on the Civil Rights Act, and thus does not require Plaintiff to have acted under color of law. The motion to dismiss shall be denied.

### MOTION FOR SUMMARY JUDGMENT

Summary judgment is proper "if pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56. The party moving for summary judgment has the initial burden of showing the absence of a genuine issue of material fact. *See Adickes v. S.H. Kress and Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970), and *Zoslaw v. MCA Distrib. Corp.*, 693 F.2d 870, 883 (9th Cir.1982). Once the movant presents evidence which, if uncontroverted, would entitle the movant to a directed verdict at trial, the burden then shifts to the respondent to set forth specific facts demonstrating that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). If the factual context makes the respondent's claim implausible, that party must come forward with more persuasive evidence than would otherwise be necessary to show that there is a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–

87, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *California Arch. Bldg. Prod. v. Franciscan Ceramics*, 818 F.2d 1466, 1468 (9th Cir.1987), *cert. denied*, 484 U.S. 1006, 108 S.Ct. 698, 699, 98 L.Ed.2d 650 (1988). A material issue of fact is one that affects the outcome of the litigation and requires a trial to resolve the differing versions of the truth. *See Admiralty Fund v. Hugh Johnson & Co.*, 677 F.2d 1301, 1305–06 (9th Cir.1982).

When faced with a motion for summary judgment, the material before the court "must be viewed in the light most favorable to the [non-moving] party," *Adickes v. S.H. Kress and Co.*, 398 U.S. at 157, 90 S.Ct. at 1608, and it must appear to a certainty that the plaintiff would not be entitled to relief under any set of facts that could be proven under the allegations of the complaint. *Halet v. Wend Investment Co.*, 672 F.2d 1305 (9th Cir.1982). Furthermore, allegations of a pro se complaint are held to less stringent standards than formal pleadings drafted by lawyers. *Haines v. Kerner*, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972) (per curiam). Finally, summary judgment is not a disfavored procedural shortcut, but an integral part of the federal rules as a whole. *Celotex Corp. v. Catrett, supra.*

Plaintiff has been incarcerated within the Nevada Department of Prisons since 1986. Since becoming so confined he has inundated this District with civil rights lawsuits, on behalf of himself and as well as others [1], most all of which have been either patently frivolous or insufficient to withstand a motion for summary judgment—although he has prevailed in a few actions. In an apparent attempt to entice Plaintiff to stop the plethora of lawsuits, Defendants agreed to transfer Plaintiff to a preferred, lower-custody institution. Plaintiff disputes that he was transferred pursuant to any such agreement. And in fact, he states that after receiving a memorandum from Defendant Director Angelone regarding the conditional transfer [2],

---

**2.** The memorandum states, in full:
"As you are aware, I approved your transfer to N[orthern] N[evada] C[orrectional] C[enter]. Whether or not you remain at NNCC will be predicated upon your behavior.

he began assisting any and all inmates he possible could so as to commence more actions against the Department of Prisons. Plaintiff was ultimately transferred back to the Nevada State Prison. He claims that the retaliatory transfer violates his rights. Plaintiff's first claim contains two parts: (1) that he has a First Amendment right to assist other inmates with litigation, and (2) that the transfer was in retaliation for his incessant exercising of his First Amendment right to help other inmates with litigation. Necessarily, the second is dependent on a determination in Plaintiff's favor on the first claim. Plaintiff's second claim is similar to part two of the first claim, but involves seizure of his typewriter instead of a transfer, allegedly in retaliation for his assisting others.

*First Amendment Right To Assist Other Inmates*

■ Although Defendants are correct that an inmate has no constitutional right to a *position* as an inmate law clerk, this does not mean that an inmate does not have a protectible right to be a "jailhouse lawyer" helping other inmates with litigation. It is well settled that "[a] prison inmate retains those first amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Pell v. Procunier,* 417 U.S. 817, 822, 94 S.Ct. 2800, 2804, 41 L.Ed.2d 495 (1974). Further, "assisting other inmates with their habeas petitions, ... encourag[ing] and offer[ring] to help his fellow students ... in legal matters, and ... pursuing legal actions of his own," are "protected by the first amendment." *Rizzo v. Dawson,* 778 F.2d 527, 531 (9th Cir.1985).

Thus, Plaintiff does retain a first amendment right to assist other inmates with litigation.

*Transfer As Retaliation*

■ Nevertheless, Plaintiff's first amendment rights are not absolute, because Defendants may infringe upon them as long as the infringement is "reasonably related to legitimate penological interest." *Thornburgh v. Abbott,* 490 U.S. 401, 413, 109 S.Ct. 1874, 1881, 104 L.Ed.2d 459 (1989) (involving first amendment right to correspond via the mail), relying on *Turner v. Safley,* 482 U.S. 78, 89, 107 S.Ct. 2254, 2261, 96 L.Ed.2d 64 (1987).[3] The same case that first recognized an inmate's first amendment right to assist other inmates with litigation also recognized that the right could be restricted.

Even in the absence of such alternatives, the State may impose reasonable restrictions and restraints upon the acknowledged propensity of prisoners to abuse both the giving and the seeking of assistance in the preparation of applications for relief: for example, by limitations on the time and location of such activities and the imposition of punishment for the giving or receipt of consideration in connection with such activities.

*Johnson v. Avery,* 393 U.S. 483, 490, 89 S.Ct. 747, 751, 21 L.Ed.2d 718 (1969). There can be no doubt about whether Plaintiff has abused his right to assist other inmates, and his abuse of the judicial process itself.[4] Since becoming incarcerated, he has been convicted of five counts of perjury, forgery and offering false evidence, not only for himself but having also involved other inmates as part of his "assisting" them with litigation. He has been sanctioned by the prison system

---

"First, you are instructed that you will *not* assist any other inmate, whether currently incarcerated or released, with any legal work whatsoever. If you are found to be assisting any inmate as defined above, you will be disciplined and returned to the Nevada State Prison (NSP).
"You are being given a chance by your transfer to NNCC. Your status is entirely within your hands."
Exhibit A, attached to Plaintiff's motion for summary judgment (# 13) (emphasis original).

**3.** *Thornburgh* specifically overruled *Procunier v. Martinez,* 416 U.S. 396, 94 S.Ct. 1800, 40

L.Ed.2d 224 (1974), to the extent that it had been interpreted to require a "least restrictive means" test for first amendment issues. *Thornburgh,* 490 U.S. at 414, 109 S.Ct. at 1882. Thus, the statements in *Rizzo v. Dawson,* 778 F.2d 527, 532 (9th Cir.1985), and *Storseth v. Spellman,* 654 F.2d 1349, 1355 (9th Cir.1981), requiring a showing that the regulations are "narrowly tailored", i.e., "no greater than is necessary to protect the particular governmental interest involved," are no longer the correct standard.

**4.** See footnote 1 *infra.*

a multitude of times for violations of the Code of Penal Discipline relating to his own litigation and his assisting other inmates (e.g., fraud, charging inmates for legal assistance, misuse of the mails, tampering with evidence, extortion, etc.). Further, Plaintiff has been sanctioned by the members of this Court in the past, e.g., *Wiideman v. McKay*, 132 F.R.D. 62 (D.Nev.1990) (15 days loss of commissary privileges), and *Wiideman v. Ignacio*, CV–N–92–28–HDM ($200 fine to be paid in $10 monthly increments to the Nevada Attorney General's Office for fraud). *See also, Wiideman . v. Foster*, 154 F.R.D. 259 (1994) (imposition of sanctions pending under submission with Senior Judge James M. Burns), wherein on March 18th the court entered an order finding that Plaintiff "Wiideman forged the court order and unlawfully caused prison officials to act upon same." 154 F.R.D. at 260.

The act of retaliation about which Plaintiff complains was his transfer to a "less desirable" prison facility. It is clear that this transfer occurred because Plaintiff continued to assist other inmates with litigation even after having been transferred to the "more desirable" facility on the condition that he not assist other inmates with litigation. Plaintiff's repetitive violations of the Code of Penal Conduct related to his "assisting" other inmates with litigation, additional criminal convictions while incarcerated related to his own litigation and his "assisting" other inmates, as well as his causing other inmates to be prosecuted for criminal violations and violations of the Code of Penal Conduct related to his "assisting" them with litigation, is a sufficient basis for Defendants to have imposed a restriction upon him forbidding him from assisting any other inmate with litigation. Suppressing criminal activity and conduct contrary to the Code of Penal Conduct are clearly "legitimate penological interests."[5] Accordingly, Plaintiff's *transfer* because of his continued operation as a "jailhouse lawyer", and *barring* him from continued operation as a "jailhouse lawyer", was and is a permissible infringement on Plain-

tiff's first amendment right to assist other inmates with litigation.

The court notes that precluding Plaintiff from continued operation as a "jailhouse lawyer" does not prevent other inmates from access to the courts. For years, inmates within the Nevada Department of Prisons have litigated the validity of their access to the courts. The prison system provides inmates with adequate access to the courts, in compliance with the dictates of *Bounds v. Smith*, 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977), by providing law libraries and the assistance of inmate law clerks. *See, e.g., Wood v. Housewright*, 900 F.2d 1332, 1335 (9th Cir.1990).

*Seizure Of Typewriter As Retaliation*

Plaintiff recognizes that he does not have a protected constitutional right to possess or have access to a typewriter while imprisoned, and he states that such is not being asserted herein. Instead, Plaintiff claims that his typewriter was seized as a form of retaliation for his assisting other inmates with litigation. For the same reasons as outlined above, where Plaintiff did have a protected constitutional right, seizing equipment which Plaintiff has no right to possess fails to rise to the level of an impermissible infringement. Even assuming that Plaintiff had a protected right to possess the typewriter, the seizure was "reasonably related to a legitimate penological interest", i.e., hindering Plaintiff's proclivity to produce forged documents, continued violations of the Code of Penal Conduct, causing other inmates to receive disciplinary sanctions, etc.

Defendants are therefore entitled to summary judgment on Plaintiff's complaint. Plaintiff's motion to dismiss the counterclaim having been denied herein, he must now respond to the counterclaim asserted in the Answer.

IT IS, THEREFORE, HEREBY **OR-DERED** that Defendants' motions to strike (## 57, 58 & 65) are GRANTED. Plaintiff's motions # 44a & # 55 and the unsigned affi-

---

**5.** Defendants legitimate policies and goals "are preservation of internal order and discipline, the maintenance of institutional security, and reha-

bilitation of prisoners." *Storseth v. Spellman*, 654 F.2d 1349, 1355 (9th Cir.1981).

davit attached to # 63 are hereby STRICK-EN.

IT IS FURTHER **ORDERED** that Plaintiff's motion to grant preliminary injunction pursuant to Local Rule 140–6 (# 42), motion for order to show cause (# 44), motions to strike (# 45 & # 50), and motion for declaratory judgment (# 64) are DENIED.

IT IS FURTHER **ORDERED** that Defendants' motions for sanctions (# 28 & # 52) are DENIED without prejudice to renewal should they not prevail on their counterclaim, and Defendants motion to strike (# 29) and motion to stay (# 66) are DENIED as moot.

IT IS FURTHER **ORDERED** that Plaintiff's motion for summary judgment (# 13) is DENIED and Defendants' cross-motion for summary judgment (# 39) is GRANTED.

IT IS FURTHER **ORDERED** that Plaintiff's motion to dismiss (# 13) Defendants' counterclaim is DENIED. Plaintiff shall have twenty (20) days in which to show cause why the injunctive relief requested in the counterclaim should not be granted. Defendants shall reply within fifteen (15) days thereafter.