105 P.3d 694

**Richard DRENNON, Petitioner–Appellant,**

v.

**Olivia CRAVEN, Respondent.**

**No. 29205.**

Court of Appeals of Idaho.

Aug. 20, 2004.

Rehearing Denied Oct. 1, 2004.

Richard Drennon, Boise, pro se appellant.

Hon. Lawrence G. Wasden, Attorney General; Timothy R. McNeese, Deputy Attorney General, Boise, for respondent.

GUTIERREZ, Judge.

Richard Drennon appeals pro se from the district court's memorandum decision and order dismissing his petition for a writ of *habeas corpus* and denying his motion for appointment of counsel. He also appeals from the district court's order denying his motion for reconsideration. We affirm in part and reverse in part, remanding for further pro-

ceedings on the retaliation claim made in Drennon's *habeas corpus* petition.

## I.

## BACKGROUND

Drennon, an inmate at the Idaho Maximum Security Institution, was denied parole in July 1999. Following the denial, Drennon petitioned for a writ of *habeas corpus,* as against the Idaho Commission of Pardons and Parole through its Executive Director, Olivia Craven. Craven moved for summary judgment. Drennon moved for appointment of counsel. The district court held Drennon's motion for appointment of counsel in abeyance and held a hearing on Craven's motion for summary judgment. Following the hearing, the district court issued a "memorandum decision and order" granting Craven's motion for summary judgment, dismissing Drennon's *habeas corpus* petition, and effectively denying Drennon's motion for appointment of counsel by deeming it moot. Drennon then filed a motion under I.R.C.P. 59(e) for reconsideration of the memorandum decision and order, which the district court denied.

Drennon appeals, challenging the district court's grant of summary judgment, its denial of his motion for appointment of counsel, and its denial of his motion to reconsider.

## II.

## ANALYSIS

### A. *Habeas Corpus*

Drennon challenges the district court's dismissal of his *habeas corpus* petition. Because his petition stems from the parole commission's denial of parole, we are mindful of several, interacting standards of review in this case. First, the parole commission has broad discretion in making its parole decisions. *Ybarra v. Dermitt,* 104 Idaho 150, 151, 657 P.2d 14, 15 (1983). Second, generally when a court reviews a parole decision, its inquiry is only whether there is a rational basis in the record for the commission's conclusions—not whether the determination is supported by the preponderance of

the evidence, or even by substantial evidence. *Id.* at 151, 657 P.2d at 15. Third, the decision to issue a writ of *habeas corpus* is within the trial court's discretion. *Hays v. State*, 132 Idaho 516, 518, 975 P.2d 1181, 1183 (Ct. App.1999).

Finally, this Court, in an appeal from a summary judgment dismissing a *habeas corpus* petition, is bound by the same standard of review as the trial court. *Freeman v. Idaho Dep't of Corr.*, 138 Idaho 872, 875, 71 P.3d 471, 474 (Ct.App.2003). Summary judgment under I.R.C.P. 56(c) is proper only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Hays*, 132 Idaho at 519, 975 P.2d at 1184. When assessing summary judgment on a *habeas corpus* petition, we treat all uncontroverted allegations in the petition as true, and we liberally construe all controverted facts and draw all reasonable inferences in favor of the nonmoving party. *See id.; Freeman*, 138 Idaho at 875, 71 P.3d at 474.

Drennon's claims in his petition for writ of *habeas corpus* fall into four categories. (1) Drennon claims he was denied access to the materials the parole commission considered in making its parole determination. (2) Drennon claims he was not afforded full consideration of the favorable information he presented to the commission. (3) Drennon claims the parole commission based its decision on false and inaccurate information. (4) Drennon claims the commission denied him parole in retaliation for his activities as an inmate litigator. All of this alleged conduct, Drennon claims, violated constitutional and other rights that he is entitled to as a prisoner.

■ Drennon correctly acknowledges that in Idaho there is no protected liberty interest in parole. His acknowledgment directly recognizes—and it has long been settled—that the possibility of parole is not protected by due process and that inmates have no constitutional right to due process in parole hearings. *See Izatt v. State*, 104 Idaho 597, 600–601, 661 P.2d 763, 766–767 (1983); *Hays v. Craven*, 131 Idaho 761, 764, 963 P.2d 1198, 1201 (Ct.App.1998); *Vittone v. State*, 114 Idaho 618, 619, 759 P.2d 909, 910 (Ct.App.1988). Rather, Drennon appears to make an argument that the parole commission's conduct violated the commission's own rules, found at IDAPA 50.01.01 *et seq.*, and the provisions of Idaho's parole statute, I.C. § 20–223. Drennon contends that he has "a right to a 'fair consideration' for parole, based upon a 'fair and accurate' record relied upon by the commission during their 'consideration' for parole eligibility."

### 1. Drennon's access to the commission's materials

■ Drennon contends that he should have had an opportunity to review and rebut the I.C. § 20–223(b) psychological evaluation of him prepared for the commission. Idaho Code § 20–223(c) expressly provides, however, that designated reports prepared specifically for the commission's use in making a parole determination—including those that contain psychological information—shall be exempt from public disclosure. Furthermore, in support of his argument on this issue Drennon has cited only overruled authority and cases involving protected liberty interests.[1] Again, parole is not a protected liberty interest under Idaho's correctional scheme. Therefore, as a matter of law, Drennon has failed to show that he is entitled to review or rebut his I.C. § 20–223(b) psychological evaluation.

---

**1.** Drennon cites to: *Hili v. Sciarrotta*, 140 F.3d 210 (2d Cir.1998) (concerning the accuracy of presentencing report used in sentencing proceeding—not in parole decision); *Frazier v. Coughlin*, 81 F.3d 313 (2d Cir.1996) (assuming, for the sake of argument, that inmate had protected interest in accurate prison records, but still holding that inmate's claim was properly dismissed); *Gambino v. Morris*, 134 F.3d 156 (3d Cir.1998) (holding that fact that petitioner did not have an opportunity to rebut evidence against him *exacerbated* already significant inadequacy in evidence);

*Browning v. Vernon*, 44 F.3d 818 (9th Cir.1995) (finding protected liberty interest involved in rider program—not parole process); *Jancsek v. Oregon Board of Parole*, 833 F.2d 1389 (9th Cir. 1987) (petitioner was afforded due process assuming a protected liberty interest was involved); *Johnson v. Texas Dep't of Criminal Justice*, 910 F.Supp. 1208 (W.D.Tex.1995) (reversed), *rev'd*, *Johnson v. Rodriguez*, 110 F.3d 299 (5th Cir. 1997); *State v. Coassolo*, 136 Idaho 138, 30 P.3d 293 (2001) (concerning rider program—not parole process).

Drennon likewise claims that he has a right to review and challenge all the other materials that the commission considered in making its parole determination. He relies here exclusively on the same case law involving situations where inmates are entitled to due process. While inmates may have a right to due process in certain proceedings, such as sentencing, probation, and parole revocation, when being considered for parole release inmates are due only the processes set out by the parole statute and the parole commission's rules. As with the psychological report, Drennon has not shown that either I.C. § 20–223 or the commission's rules entitle him to review any of the other materials the commission considers.

### 2. The commission's consideration of Drennon's information

■ Drennon prepared a packet of information that he wanted the commission to consider before making its parole decision. Drennon contends that he was denied the opportunity to present this packet to the commission. He alleges, for one thing, that IDOC officials refused to photocopy the packet and mail it to the commission. In his *habeas corpus* petition, though, Drennon named as a party neither IDOC nor any of its officials. Rather, he named only Olivia Craven, executive director of the Commission of Pardons and Parole. So, even assuming Drennon is entitled to relief on his claims concerning the IDOC officials' alleged conduct, the district court could not have entered a binding order granting that relief. We therefore will not address the merits of Drennon's claims against IDOC officials.

Drennon also claims that, when he finally presented the packet to the commission, the commission improperly refused to accept it. The Idaho parole statute, I.C. § 20–223, requires the commission to afford an inmate under consideration for parole the opportunity to be interviewed by someone from the commission. However, Drennon has not identified any statutory provision requiring the commission to accept or consider documents that an inmate submits. If such a requirement does exist, then it must arise from the commission's own rules. The com-

mission has a rule regarding submission of written documents in parole considerations. *See* IDAPA 50.01.01.200.06.b. That rule provides that "[a]ll written documents and letters to be considered at a particular hearing must be submitted seven (7) days in advance of the hearing in order to ensure that it [sic] will be considered; other documents may be allowed by unanimous consent of the commissioners present." IDAPA 50.01.01.200.06.b.

Drennon did not present his information packet to the commission until his hearing began. The commission could have chosen to review the packet at that time, but by its own rules, it did not have to because Drennon had not submitted his materials seven days in advance. Indeed, in the minutes of Drennon's parole hearing the commission stated that it chose not to consider Drennon's packet because it did not have time to adequately review it. Drennon has failed to show, therefore, that the commission violated either its own rules or I.C. § 20–223.

Drennon also alleges that the parole commission refused to consider the numerous rehabilitative programs he completed while in prison. As we have said, the parole commission has broad discretion in making parole determinations, and its decisions often involve no more than informed predictions about what would best serve correctional purposes or the inmate's safety and welfare. *Vittone*, 114 Idaho at 620, 759 P.2d at 911; *see also* I.C. § 20–223(c). The commission's rules state that the commission "allows for parole consideration criteria," but that "no prediction regarding the granting of parole can be based upon any hearing standard or criteria." IDAPA 50.01.01.250.01.c. Even assuming Drennon's allegation is true, there is no legal basis for a material factual dispute on this claim.

### 3. The commission's alleged use of fabricated and inaccurate information

Drennon alleges that the commission based its parole decision on "inaccurate, fabricated and/or prejudicially prepared" information. Drennon claims that this alleged use of fabricated or inaccurate information violated the rights he has under the First and

Fourteenth Amendments to the United States Constitution.

In support of his claim, Drennon cites several authorities, most notably *Monroe v. Thigpen*, 932 F.2d 1437 (11th Cir.1991). In *Thigpen*, the Eleventh Federal Circuit Court of Appeals held that even in a jurisdiction where inmates have no liberty interest in parole, a parole commission's policies may nevertheless be constitutionally offensive if "administered maliciously or in bad faith." *Id.* at 1441. The *Thigpen* court found a constitutional violation where an Alabama parole board admitted that it had relied on false information in denying parole to the complaining inmate. In a later case the Eleventh Circuit clarified that an inmate asserting a *Thigpen* claim must make specific allegations of reliance on false information:

> While we have held that the use of false information in a parole file can be a due process violation, prisoners cannot make a conclusory allegation regarding the use of such information as the basis of a due process claim. Without evidence of the [Parole] Board's reliance on false information, a prisoner cannot succeed. As Jones did not come forward with any false information relied on by the Board, the district court did not err in dismissing his due process claims.

*Jones v. Ray*, 279 F.3d 944, 946 (11th Cir. 2001) (citations omitted). Other courts have strongly questioned the holding in *Thigpen* and held instead that a prisoner cannot challenge parole procedures on due process grounds in the absence of a cognizable liberty interest in parole. *See, e.g., Johnson v. Rodriguez*, 110 F.3d 299, 308–309 n. 13 (5th Cir.1997). In this case, even assuming that the *Thigpen* holding is valid and that the parole commission had false or inaccurate information, Drennon has not presented any evidence that the commission actually relied on false information in making its parole decision. Therefore, the district court did not err in dismissing this claim.

### 4. The commission's alleged retaliation against Drennon

■ Drennon alleges that the parole commission denied him parole in retaliation for his litigative activities while in prison, both in pursuing his own actions against state authorities and in assisting other inmates with similar litigation.[2] Craven's argument against this claim, which the district court adopted in its memorandum decision, is that Drennon's disciplinary record in prison and the serious nature of his crime, a sex offense, provided a rational basis for the commission's denial decision. An administrative decision may have a rational basis but nevertheless be unconstitutional. *See Pabst v. Wisconsin Dept. of Taxation*, 19 Wis.2d 313, 120 N.W.2d 77, 82 (1963) ("the courts should not substitute their judgment for the agency's application of a particular statute to the facts found if a rational basis exists in law for the agency's interpretation *and* it does not conflict with … constitutional prohibitions") (emphasis added).

■ Access to the courts is a fundamental constitutional right. *Evensiosky v. State,*

---

**2.** Specifically, Drennon submits, in an affidavit supporting his opposition to Craven's motion for summary judgment, that the parole commission "began, once again, to drill me on my legal actions, and repeatedly ask the same question, which was what gave me the right to file suits and assist other inmates pursue their legal actions.... This discussion … went on for a good fifteen to twenty (15 to 20) minutes...." In his *habeas corpus* petition, Drennon alleges:

> The Commission retaliated against Petitioner by punishing him for engaging in a protected conduct, and the adverse reaction was related directly [t]o the protected conduct. Petitioner was denied his Fourteenth Amendment rights when the Commission [retaliated] against him for exercising his First Amendment rights.

and further that:

> During the course of the Parole Hearing the Commission members focused on Petitioner's access to court actions. Including Petitioner's involvement in the class action lawsuits. Petitioner was repeatedly questioned as to why he would assist other inmates with their access to court problems. When Petitioner answered that he had assisted them at their request, and that Petitioner had received the training to assist inmates in their access to court actions, all Petitioner's answers did was incite the Commission members to anger.

In his brief on appeal, Drennon reiterates these claims.

Craven, in her response and motion for summary judgment, contended that the parole commission "specifically did not ask about the Petitioner's litigating activity," citing to an affidavit of Olivia Craven not provided to this Court.

136 Idaho 189, 191, 30 P.3d 967, 969 (2001). Pursuing and assisting in litigation to vindicate civil rights are activities protected by the First Amendment to the Federal Constitution. *Rizzo v. Dawson,* 778 F.2d 527, 531 (9th Cir.1985). Therefore, an inmate who was denied parole at least partly because of his or her legal actions against state officials may be entitled to relief. *Id.; Clark v. State of Ga. Pardons and Paroles Bd.,* 915 F.2d 636 (11th Cir.1990) (ruling that complaint in which inmate alleged he was denied parole because of his pursuing litigation against prison officers sufficient to state a claim); *Serio v. Members of Louisiana State Bd. of Pardons,* 821 F.2d 1112 (5th Cir.1987) (finding inmate's allegation that he was denied parole in part because he had previously filed lawsuits against prison officials sufficient to state a claim); *In re Addleman,* 139 Wash.2d 751, 991 P.2d 1123 (2000) (holding that if an inmate is denied parole and that denial is caused by an attempt to access the courts, a prima facie case for retaliation is made). However, unlike an ordinary citizen, a prisoner's associational rights may be restricted by prison authorities because of the institutional need to maintain order. *Rizzo,* 778 F.2d at 532. Thus, to state a cause of action for retaliation because of the exercise of first amendment rights in bringing and assisting in civil rights litigation, a prisoner must also allege that the prison authorities' retaliatory action did not advance legitimate goals of the correctional institution or was not tailored narrowly enough to achieve such goals. *Id.*

To state a first amendment claim for retaliation, a prisoner must allege that (1) the type of activity he engaged in was protected under the first amendment, (2) the state impermissibly infringed on his right to engage in the protected activity, and (3) the retaliatory action was not reasonably related to a legitimate penological interest. *See Rizzo,* 778 F.2d at 531–532; *Pryor–El v. Kelly,* 892 F.Supp. 261, 274 (D.D.C.1995); *cf. Wiideman v. Angelone,* 848 F.Supp. 136, 139 (D.Nev.1994) (citing *Thornburgh v. Abbott,* 490 U.S. 401, 413, 109 S.Ct. 1874, 1881, 104 L.Ed.2d 459, 473 (1989)). Additionally, some courts have required an inmate alleging retaliation to show that his protected conduct was a substantial or motivating factor in the questioned decision. *See, e.g., Pryor–El,* 892 F.Supp. at 274 (citing *Mt. Healthy City Sch. Dist. v. Doyle,* 429 U.S. 274, 287, 97 S.Ct. 568, 576, 50 L.Ed.2d 471, 483 (1977)).

Summary judgment on Drennon's retaliation claim is appropriate only if Craven is entitled to judgment as a matter of law and there is no genuine issue of material fact relating to the claim after the pleadings, affidavits, and other evidence in the record have been construed most favorably to Drennon. *See* I.R.C.P. 56(c). We conclude that summary judgment was inappropriate. First, Drennon has specifically alleged that the type of activity he engaged in—suing state officials and helping other inmates do the same—is protected under the first amendment. This allegation has a valid basis in law, *see Soranno's Gasco, Inc. v. Morgan,* 874 F.2d 1310, 1314 (9th Cir.1989) (The right of access to the courts is subsumed under the first amendment right to petition the government for redress of grievances), and is not precluded by the fact that Drennon has no protected liberty interest in parole, *see Perry v. Sindermann,* 408 U.S. 593, 599, 92 S.Ct. 2694, 2698, 33 L.Ed.2d 570, 578 (1972); *cf. Rizzo,* 778 F.2d at 531. Evidence of Drennon's litigative activities is a matter of public record. *See* I.R.E. 201. In fact, Craven admits that Drennon is an "active litigator."

Second, Drennon has alleged and submitted evidence that the parole commission impermissibly infringed on his right to engage in this protected activity. Specifically, Drennon claimed, with supporting affidavits, that he was denied parole at least partly because of his legal actions against state officials and the legal assistance he gave other inmates. Retaliation for assisting with litigation and bringing litigation generally violates the first amendment. *Rizzo,* 778 F.2d at 532.

Finally, Drennon has sufficiently alleged and has submitted evidence that the commission's alleged retaliatory parole denial was not reasonably related to a legitimate penological interest. In his *habeas corpus* petition, he claims that he was "realiatorily [sic] and arbitrarily denied parole as punishment for exercising his constitutional rights."

Drennon supports his allegations with an affidavit stating that the parole commission "drill[ed]" him on his legal actions for "fifteen to twenty minutes." Furthermore, the minutes from Drennon's parole hearing mention prior disciplinary actions against Drennon for litigative activities but otherwise provide no insight into the parole commission's reasons for denying parole. Likewise, this evidence also sufficiently supports the possibility that Drennon's protected conduct was a substantial or motivating factor in the parole commission's decision.

We note, with emphasis, that it is far from clear that the parole commission acted arbitrarily and with a retaliatory motive. But Drennon's petition and the accompanying evidence nevertheless suffice to survive summary judgment. Therefore, we remand this claim for further proceedings. Based on our conclusion as to Drennon's claim for retaliation, we need not address Drennon's claim in regard to the district court's denial of his motion for reconsideration.

**B. Appointment of Counsel**

██ Drennon argues that the district court erred in denying his motion for appointment of counsel. The Idaho Supreme Court recently held that, "there is no basis for appointment of counsel" in *habeas corpus* actions. *Quinlan v. Comm'n for Pardons and Parole,* 138 Idaho 726, 730, 69 P.3d 146, 150 (2003). It follows that the district court was correct in denying Drennon's request for counsel.

**C. Attorney Fees and Costs**

██ Craven requests costs and reasonable attorney fees on appeal under I.C. §§ 12–122, 12–123, I.A.R. 35(a)(5) and I.A.R. 41. Where an action is brought or pursued frivolously, reasonable attorney fees may be awarded under I.C. §§ 12–122, –123. *See Hughes v. State Dept. of Law Enforcement,* 129 Idaho 558, 563, 929 P.2d 120, 125 (1996); *Dopp v. Idaho Comm'n of Pardons and Parole,* 139 Idaho 657, 663, 84 P.3d 593, 599 (Ct.App.2004). Because Drennon has presented material issues of unsettled law in this appeal and has prevailed in part on the appeal, attorney fees would not be appropriate

under I.C. §§ 12–122 or 12–123. We therefore deny Craven's request for attorney fees and costs.

## III.

## CONCLUSION

Drennon has submitted allegations and evidence sufficient to overcome summary judgment on his claim that the parole commission denied him parole in retaliation for his litigative activities. Accordingly, we reverse the district court's grant of summary judgment and dismissal of Drennon's *habeas corpus* petition and remand to the district court for further proceedings on the retaliation claim. The district court, however, properly denied the remainder of Drennon's claims raised in his *habeas corpus* petition and also properly denied Drennon's motion for appointment of counsel. We therefore affirm in part, reverse in part and remand for further proceedings. No costs or attorney fees are awarded.

Chief Judge LANSING and Judge PERRY concur.

