IN THE COURT OF APPEALS OF THE STATE OF IDAHO
Docket No. 38318

| KATHLEEN ANN BLANC, | ) | 2012 Unpublished Opinion No. 335 |
|---|---|---|
| | ) | |
| Plaintiff-Appellant, | ) | Filed:  January 26, 2012 |
| | ) | |
| v. | ) | Stephen W. Kenyon, Clerk |
| | ) | |
| POCATELLO WOMEN'S | ) | THIS IS AN UNPUBLISHED |
| CORRECTIONAL CENTER, BETH | ) | OPINION AND SHALL NOT |
| CRONIN, ROSS CASTELTON, JENNIFER | ) | BE CITED AS AUTHORITY |
| ALDER, and BRIAN UNDERWOOD, | ) | |
| individually and under color, | ) | |
| | ) | |
| Defendants-Respondents. | ) | |
| | ) | |

Appeal from the District Court of the Sixth Judicial District, State of Idaho, Bannock County.  Hon. David C. Nye, District Judge.

Judgment of dismissal, <u>affirmed</u>.

Kathleen Ann Blanc, Pocatello, pro se appellant.

Racine, Olson, Nye, Budge, & Bailey, Chartered; Jonathan M. Volyn, Pocatello, for respondents.

---

GUTIERREZ, Judge

Kathleen Ann Blanc appeals from the district court's judgment of dismissal, dismissing her amended complaint to recover damages for civil rights violations allegedly sustained during her incarceration.  Specifically, she appeals the district court's order granting the Respondents' motion to dismiss for failure to state a claim upon which relief can be granted.  For the reasons set forth below, we affirm.

## I.

## FACTS AND PROCEDURE

While incarcerated at the Pocatello Women's Correctional Center in March 2008, Blanc filed a prisoner civil rights complaint in Bannock County alleging various issues relating to the appointment of a guardian for her baby born while she was incarcerated and her treatment by

1

prison personnel. In April 2008, she filed an amended complaint setting forth the same allegations. The Respondents filed a motion to dismiss pursuant to Idaho Rule of Civil Procedure 12(b)(6) for failure to state a claim. The district court interpreted Blanc's amended complaint as advancing two general issues--that she had been denied access to the courts regarding the guardianship of her baby because Respondents failed to provide her with the requisite "guardianship form" and notarization, and that she had been retaliated against by prison personnel upon her threat to file suit against them regarding the guardianship issue. The district court granted the motion to dismiss as to both issues and entered a judgment of dismissal. Blanc now appeals.

## II.

## ANALYSIS

As an appellate court, we will affirm a trial court's grant of a Rule 12(b)(6) motion where the record demonstrates there are no genuine issues of material fact and the case can be decided as a matter of law. *Coghlan v. Beta Theta Pi Fraternity*, 133 Idaho 388, 398, 987 P.2d 300, 310 (1999). When reviewing an order of the district court dismissing a case pursuant to Rule 12(b)(6), the non-movant is entitled to have all inferences from the record and pleadings viewed in its favor, and only then may the question be asked whether a claim for relief has been stated. *Coghlan*, 133 Idaho at 398, 987 P.2d at 310. The issue is not whether the plaintiff will ultimately prevail, but whether the party is entitled to offer evidence to support the claims. *Orthman v. Idaho Power Co.*, 126 Idaho 960, 962, 895 P.2d 561, 563 (1995). In order to survive a Rule 12(b)(6) motion to dismiss, it is not enough for a complaint to make conclusory allegations. *Owsley v. Idaho Indus. Comm'n*, 141 Idaho 129, 136, 106 P.3d 455, 462 (2005). Although the non-movant is entitled to have her factual assertions treated as true, this privilege does not extend to the conclusions of law the non-movant hopes the court to draw from those facts. *Id*.

Blanc pursues this appeal, as she pursued her claim below, pro se and, thus, we encounter some difficulty in ascertaining her claims of error. However, after reviewing the amended complaint, the district court distilled her allegations as generally advancing two claims: that Blanc was denied access to the courts in regard to the guardianship of her baby and that she

2

suffered retaliation by the Respondents due to the guardianship issue. We address each claim in turn.[1]

## 1. Access to the Courts

In her amended complaint, Blanc contended prison personnel violated her constitutional rights by intentionally depriving her of documents and the notarization of forms regarding the guardianship of her baby while she was pregnant.[2] The district court interpreted this as a claim that Blanc had been denied access to the courts and concluded that she had failed to state a valid claim for relief in this regard. Therefore, dismissal pursuant to Rule 12(b)(6) was appropriate.

It is well settled that prisoners are afforded the constitutional right of *limited* access to the courts for purposes of directly or collaterally challenging their convictions, sentences, or conditions of confinement and to pursue actions for violations of their civil rights. *Lewis v.*

---

[1] Blanc appears to introduce new factual allegations on appeal that were not raised below and are not contained in the record on appeal. It is well established that issues not raised below are deemed waived and such issues will not be considered on appeal. *Sanchez v. Arave*, 120 Idaho 321, 322, 815 P.2d 1061, 1062 (1991).

[2] While not entirely clear, it appears that Blanc's claim is not that she was entirely restricted from filling out a "guardianship form" and having it notarized, only that there was a delay in receiving the form and/or prison officials refused, at some point, to approve her choice of guardian. In addition, it appears from the record that Blanc's baby was eventually placed with a guardian of Blanc's choice (a woman who had custody of Blanc's other children and with whom Blanc alleges she had worked out a visitation agreement). Thus, even under the most liberal interpretation, Blanc was not completely denied access to the courts (assuming it is due her in such circumstances) and this claim is likely moot because her baby was eventually placed with her chosen guardian. *See Freeman v. Idaho Dept. of Corr.*, 138 Idaho 872, 875, 71 P.3d 471, 474 (Ct. App. 2003) (holding that an issue is moot and a party lacks a legally cognizable interest in the outcome when even a favorable judicial decision would not result in relief).
Further, the nature of the "guardianship form" to which Blanc refers is unclear, as is her "right" to obtain it. Blanc states that if an incarcerated pregnant mother does not fill out such a form and have it notarized, the Department of Health and Welfare "takes" the child upon its birth, an outcome that she apparently wished to avoid. However, there is no evidence in the record to support this assertion.
The guardianship of minor children is governed by statute. Specifically, Idaho Code § 15-5-201 provides that a person becomes a guardian of a minor either by acceptance of a testamentary appointment or upon appointment by the court. Notably absent is a provision allowing for the appointment of a guardian by a parent through the use of a "guardianship form." Despite these issues, we will address the merits of the dismissal given that we affirm the district court's judgment of dismissal.

*Casey*, 518 U.S. 343, 354-55 (1996); *Bounds v. Smith*, 430 U.S. 817, 821 (1977); *Drennon v. Hales*, 138 Idaho 850, 853, 70 P.3d 688, 691 (Ct. App. 2003); *Bureau of Child Support Services v. Garcia*, 132 Idaho 505, 510, 975 P.2d 793, 798 (Ct. App. 1999). This right is grounded in the Due Process and Equal Protection Clauses of the United States Constitution. *Murray v. Giarratano*, 492 U.S. 1, 11 n.6 (1989); *Drennon*, 138 Idaho at 853, 70 P.3d at 691. Access to the courts must be adequate, effective, and meaningful. *Madison v. Craven*, 141 Idaho 45, 48, 105 P.3d 705, 708 (Ct. App. 2005). Specifically, where a prisoner is indigent and unrepresented, this right of access to the courts requires prison authorities to facilitate inmates' preparation and filing of meaningful legal papers by providing prisoners with adequate prison law libraries, adequate assistance from persons trained in the law, or reasonable alternative means to ensure meaningful access. *Lewis*, 518 U.S. at 351-52; *Bounds*, 430 U.S. at 828-29.

We conclude the district court did not err in finding that Blanc failed to state a claim upon which relief could be granted.[3] As noted above, a prisoner's constitutional right to access

---

[3] We do not, however, espouse the reasoning relied upon by the district court. In dismissing the claim, the court cited our decision in *Madison v. Craven*, 141 Idaho 45, 105 P.3d 705 (Ct. App. 2005), where, in discussing the nature of the access to courts right, we noted that while such access must be adequate, effective and meaningful, the right is not absolute or unconditional in the civil context, except in a very narrow group of cases where the inmate has a fundamental interest at stake. *Id.* at 48, 105 P.3d at 708. We then stated, "The United States Supreme Court has recognized only two such fundamental interests that require state courts to completely waive filing fees for indigent persons--those challenging termination of their parental rights or those seeking a divorce." *Id.* Relying on this authority, the district court in this case surmised that because Blanc's claim did not involve either divorce or termination of her parental rights, she had not alleged facts bringing her under the "exception" regarding civil cases involving inmates.

However, we must point out that no such general "exception" has been created in regard to the filing of civil suits by inmates. Rather, *Madison,* and the cases it relies upon, involved the distinct issue of whether requiring *indigent* inmates to pay certain filing fees in civil cases, which in *Madison* was a civil rights complaint, interfered with their right to access to the courts. As stated in *Madison*, the United States Supreme Court's holdings regarding parental rights terminations and divorce cases were that where these fundamental rights are implicated, the right of access to the courts requires that filing fees be waived for *any* indigent litigant in such cases. *Id.* (citing *M.L.B. v. S.L.J.*, 519 U.S. 102 (1996) (parental rights termination); *Boddie v. Connecticut*, 401 U.S. 371 (1971) (divorce proceedings)). *See also Rodriguez v. Cook*, 169 F.3d 1176, 1180 (9th Cir. 1999) (noting the United States Supreme Court has held that the Constitution requires the waiver of filing fees in criminal cases, but in the civil context the Constitution only requires waiver of filing fees in a narrow category of cases where the litigant has a fundamental interest at stake and had specifically only required the waiver of filing fees for

4

to the courts is not unlimited--it applies only to suits directly or collaterally challenging an inmate's conviction, sentence, or conditions of confinement or to pursue actions for violations of their civil rights. *Drennon,* 138 Idaho at 853, 70 P.3d at 691. Here, by attempting to file guardianship documents, Blanc was not attempting to challenge her underlying conviction, her sentence, or a condition of her confinement. Nor are we aware of any authority that interfering with an inmate's ability to file guardianship documents implicates a civil right. As the United States Supreme Court has stated:

> [The right of access to the courts] does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any *other* litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

*Lewis*, 518 U.S. at 355. Accordingly, even if Blanc's allegations of interference with her attempt to file guardianship documents are accepted as true, she has stated no constitutional claim for which relief may be granted. Thus, the district court did not err in dismissing this claim.

**2.      Retaliation**

Blanc's amended complaint also alleged that several of the Respondents retaliated against her after she threatened to file suit over their alleged interference with her attempt to place her baby with the guardian of her choice and/or after she refused to comply with their demands pertaining to the guardianship.[4] She contends prison personnel did so by, among other things,

---

indigent persons who are challenging termination of their parental rights or seeking a divorce). *Madison,* and the cases it relies on, merely recognized that this fee waiver requirement applicable to indigents in general also applies to indigent prisoners, not that inmates have the right to unfettered access to the courts in parental termination and divorce suits. In this sense, it appears the district court erroneously conflated the case law regarding what *types* of civil suits prisoners must be allowed to file in general with case law regarding requiring what types of civil suits indigent prisoners must be allowed to file *without the accompanying filing fees*. However, we may affirm the district court's conclusion upon an alternate, correct theory, which we proceed to do. *In re Estate of Bagley*, 117 Idaho 1091, 1093, 793 P.2d 1263, 1265 (Ct. App. 1990).

[4]      Again, it is somewhat unclear as to whether Blanc alleges she was retaliated against due to her threat to file suit concerning the guardianship issue or because she resisted prison

5

refusing to allow her to graduate from a cognitive self-change class, threatening her baby's guardian resulting in the guardian not bringing the baby to visit Blanc,[5] interfering with Blanc's ability to obtain a job in prison, refusing to answer grievance forms, threatening her with disciplinary action, and moving her into a cell with a known violent inmate.

To state a claim for retaliation due to the exercise of First Amendment rights, a prisoner must allege that (1) the type of activity she engaged in was protected under the First Amendment, (2) the State impermissibly infringed on her right to engage in the protected activity, and (3) the retaliatory action was not reasonably related to a legitimate penological interest. *Drennon v. Craven*, 141 Idaho 34, 39, 105 P.3d 694, 699 (Ct. App. 2004). In this case, the district court dismissed what it interpreted to be Blanc's retaliation claim because Blanc failed to allege that the purported retaliatory action was not reasonably related to a legitimate penological interest and, therefore, she had failed to state a claim upon which relief could be granted.

We conclude the district court did not err in finding that Blanc failed to state a claim as to this issue because she failed to specifically allege that the purported retaliatory action was not reasonably related to a legitimate penological interest. Rather, her claim consists of conclusory assertions that her alleged mistreatment occurred as a result of her threat to file suit over the guardianship issue. In other words, she merely states that this perceived ill treatment occurred because of her actions pertaining to the guardianship issue, but makes no allegation that such treatment was not reasonably related to a legitimate penological interest. Although the court, for

---

personnel's requirements as to who she could appoint as guardian and whether she was required to proceed through the Department of Health and Welfare or could utilize a private agency. To the extent the latter is true, the grant of the Respondents' motion to dismiss would also be proper on the ground that Blanc did not allege she was engaged in "protected activity," as is required to state a claim for retaliation. No authority has been brought to our attention, nor are we aware of any, that being allowed to choose a guardian and the agency through which a child's placement will be handled are "protected" activities. *Cf. Drennon v. Craven*, 141 Idaho 34, 39, 105 P.3d 694, 699 (Ct. App. 2004) (holding that the type of activity Drennon was engaged in--suing state officials and helping other inmates to do the same--is recognized as protected under the First Amendment).

[5]    We note that Blanc appears to allege this threat was made by "Health and Welfare." Thus, this allegation would not be relevant to determining if the Respondents, all prison personnel, engaged in retaliatory actions.

the purposes of examining the Respondents' Rule 12(b)(6) motion, was required to accept as true the *facts* alleged in Blanc's complaint (*e.g.*, that Respondents refused to allow her to graduate from a cognitive self-change class, interfered with her ability to obtain a job, refused to answer grievance forms, etc.), it was not required to accept her conclusory statement that these were "retaliatory" as opposed to legitimate penological actions. *See Owsley*, 141 Idaho at 136, 106 P.3d at 462 (noting that in order to survive a Rule 12(b) motion to dismiss, it is not enough for a complaint to make conclusory allegations because while a non-movant is entitled to have her *factual* assertions treated as true, this privilege does not extend to the conclusions of law the non-movant hopes the court to draw from those facts). *Accord Lightner v. Hardison*, 149 Idaho 712, 720, 239 P.3d 817, 825 (Ct. App. 2010) (concluding the appellants failed to make a sufficient showing that terminating visiting privileges was not reasonably related to a legitimate penological purpose and, thus, failed to make a sufficient showing on an essential element of their retaliation claim in order to survive summary judgment). *Cf. Drennon*, 141 Idaho at 39-40, 105 P.3d at 699-700 (holding that Drennon's allegation of retaliation survived summary judgment where he sufficiently alleged the required factors, including that the parole commission's alleged retaliatory parole denial was not reasonably related to a legitimate penological interest where he submitted evidence that he was extensively questioned at his parole hearing as to his previous litigation and the minutes of the parole hearing mentioned prior disciplinary actions against him for his litigative activities but otherwise did not provide insight into the commission's decision to deny parole). Accordingly, we conclude the district court did not err in granting the Respondents' motion to dismiss relative to the retaliation claim.

## III.

## CONCLUSION

The district court did not err in granting the Respondents' motion to dismiss because Blanc failed to allege facts which, if true, would entitle her to relief on either claim advanced in her amended complaint. Accordingly, the judgment of dismissal is affirmed.

Judge LANSING and Judge MELANSON **CONCUR.**

7