4 P.3d 1132

Robert D. FREEMAN, Petitioner–
Appellant,

v.

STATE of Idaho, DEPARTMENT OF
CORRECTION, James C. Spalding,
IDOC, Director, Respondents.

No. 25430.

Court of Appeals of Idaho.

May 15, 2000.

Review Denied July 31, 2000.

Robert D. Freeman, Boise, pro se appellant.

Hon. Alan G. Lance, Attorney General; Stephanie A. Altig, Deputy Attorney General, Boise, for respondent.

SCHWARTZMAN, Judge.

Robert D. Freeman, a prison inmate, appeals from the district court's appellate affirmance of the magistrate's denial of his petition for a writ of habeas corpus to permit him to solicit publishers for his poetry. We affirm.

## I.

### FACTUAL AND PROCEDURAL BACKGROUND

Freeman was sentenced to the custody of the Idaho Department of Correction (IDOC) for consecutive indeterminate terms not to exceed twenty years and ten years for two counts of lewd and lascivious conduct with a child under sixteen years of age. *See State v. Freeman,* 110 Idaho 117, 714 P.2d 86 (Ct.App.1986). In October 1988, Freeman filed a grievance after he was told that IDOC policy and procedures, as well as I.C. § 18–310 prior to its amendment in 1993, prohibited him from obtaining commercial publication of his illustrated poetry book. After the grievance was denied, Freeman filed a petition for a writ of habeas corpus seeking redress, which was summarily dismissed. The district court's affirmance of the magistrate's dismissal of Freeman's petition was reversed and remanded on appeal to give the state an opportunity to respond so' that the magistrate could "make an informed decision concerning the extent and manner by which the Department properly may regulate activities by inmates attempting to produce personal income." *Freeman v. State,* Docket No. 18887, slip op. at 3 (Ct.App. May 29, 1991) unpublished. On remand, the magistrate granted Freeman's motion to dismiss without prejudice.

On August 5, 1996, Freeman again filed a grievance, this time seeking permission to have his illustrated poetry published based in part on an amendment to I.C. § 18–310 (1993 Idaho Session Laws, ch. 120, § 2, p. 309). After his grievance was denied, Freeman filed the instant petition for a writ of habeas corpus alleging that the IDOC was preventing him from publishing his poetry. Freeman challenged IDOC policy and procedures § 318 and § 402, as well as the constitutionality of Idaho Code §§ 18–310; 20–209D, 20–209E and 29–101. The IDOC filed a reply in which it asserted that Freeman was free to send his poems to a friend who could then submit them for publication, but IDOC policy prohibits inmates from conducting a business from within the prison walls. The IDOC also asserted that Freeman lacked standing to challenge IDOC policies and procedures and Idaho statutes because he had not been deprived of any protectable interest. The reply also contained a request for summary judgment and was supported by the affidavit of Larry Wright, the warden of the South Idaho Correctional Institution—the facility housing Freeman.· Freeman filed an affidavit and memorandum asserting that a mere threat in

any form in retaliation for exercise of one's constitutional rights is sufficient to create standing.

The magistrate granted the state's motion for summary judgment in part, ruling that the only issue properly before the court was Freeman's constitutional claim that Idaho Code § 18–310 prevented him from sending out his poetry for publication. Following the hearing on this single issue, the court ruled that under the test set forth in *Turner v. Safley*, 482 U.S. 78, 89, 107 S.Ct. 2254, 2261, 96 L.Ed.2d 64, 79 (1987), there was no rational relationship between the IDOC's refusal to allow Freeman to publish his poems and any legitimate penological interest. The court ordered that Freeman be permitted to attempt to publish his poems and, in the event a publication contract was to be entered into, the poems be submitted to prison authorities for approval. The state and Freeman each appealed to the district court. After the district court ordered production of transcripts, it was discovered that the tapes of the hearing were missing. Thereafter, the case was remanded for proceedings necessary to produce a factual record for appellate review.

At the opening of the second evidentiary hearing, Freeman explained that he was denied the right to sell his poetry, not denied the right to mail it out. Freeman admitted that he had not yet attempted to find a publisher for his poetry. Freeman called Warden Wright to testify that the Board of Correction had passed policy § 402 prohibiting inmates from entering into contracts or conducting business while in IDOC custody. Warden Wright acknowledged that no policy precluded Freeman from mailing out his poetry, only that he could not personally enter into a business contract to have it published. Warden Wright explained that IDOC policy § 402 would not prevent Freeman from getting his poems published by authorizing a friend or relative outside of the prison to contract for their publication. On cross-examination, Warden Wright testified that the inmate business prohibition was instituted to halt and prevent continued criminal activity and inmate exploitation of other inmates for profit. The warden testified that the IDOC

defined running a business as producing any product for sale.

Freeman testified that from 1981 to 1985 he composed a number of poems and eventually put together two hundred in a single volume, but was told he could not sell his poems. However, he did send out selected poems for publication, and his sister received several courtesy copies of booklets containing the poems. No monetary consideration was paid or received. Freeman further testified that now he wanted to make money from his manuscript to meet his needs upon release from prison.[1] When asked why a family member could not submit his poetry for publication, Freeman indicated that his poems were copyrighted and he would have to sign a release like a power of attorney which he believed to be a contract prohibited by the IDOC.

Charles Fletcher, MSW, testified about Freeman's psychological profile and the subject matter of his poetry—a fixation with minor females as sex partners. Fletcher opined that publication of Freeman's poetry would be "a supreme validation of Mr. Freeman's pathology."

After the second hearing, the magistrate ruled that the prison regulation against contracting or publishing for profit was rationally related to the IDOC's interest in preventing criminal activity among inmates and free citizens. The court further noted that Idaho law and IDOC policy would permit Freeman to execute a power of attorney so that a family member could act on his behalf in seeking for-profit publication of the poems. Freeman filed a timely appeal to the district court. Freeman's request for appointment of counsel was denied. After consideration of the record and the respective briefs, the district court affirmed the magistrate's denial of Freeman's petition for a writ of habeas corpus. Freeman appeals.

## II.

### STANDARD OF REVIEW

■ On appeal from the decision of the district court acting in an appellate capacity in a *habeas corpus* case, this Court examines the magistrate's decision independently of,

---

1. Freeman expects to be released on September 4, 2001.

but with due regard for, the district court's decision. *State v. Bitt,* 118 Idaho 584, 585 n. 1, 798 P.2d 43, 44 n. 1 (1990); *Sivak v. State,* 130 Idaho 885, 888, 950 P.2d 257, 260 (Ct. App.1997). This Court will uphold the findings of the magistrate if they are supported by substantial, competent evidence in the record; but we exercise free review over questions of law. *Doan v. State,* 132 Idaho 796, 799, 979 P.2d 1154, 1157 (1999); *Sivak v. State,* 119 Idaho 211, 215, 804 P.2d 940, 944, (Ct.App.1991).

## III.

## THE CONSTITUTIONALITY OF IDOC'S REGULATION PROHIBITING FREEMAN FROM SEEKING PUBLICATION OF HIS POETRY WHILE A PRISON INMATE

On appeal to the district court and now to this Court, Freeman argues that the magistrate's ruling—that Freeman could have a friend or relative send his manuscript to a publisher, but he could not do so himself from prison—violates the Idaho Constitution. Implicitly, Freeman argues that he should be permitted to solicit a commercial publisher for his illustrated poems and that the prison's refusal to allow him to do so constitutes a violation of the First Amendment and/or Article I, § 9.

The IDOC business prohibition regulation, Division of Prisons Directive § 02–402–C, states in pertinent part:

B. Inmates are strictly prohibited from any of the following uses of the mail.

...

3. Soliciting or accepting anything of value without written approval of the facility head or designee.

...

7. Directing or conducting any business operations, except as necessary to protect real property or close out a business.

■ A prison regulation that restricts an inmate's First Amendment activities is valid if it is rationally related to a legitimate penological goal or purpose. *Turner v. Safley,* 482 U.S. 78, 89, 107 S.Ct. 2254, 2261, 96 L.Ed.2d 64, 79 (1987). In addition to a "valid, rational connection" between the regulation and a legitimate governmental purpose,

other factors relevant to determining the reasonableness of the regulation at issue are: (1) whether there are other means of exercising the right available to prison inmates; (2) the impact accommodation of the asserted constitutional right would have on guards and inmates, and upon the allocation of the prison's finite resources generally; and (3) the absence of ready alternatives to the regulation. *Turner,* 482 U.S. at 89–90, 107 S.Ct. at 2261–62, 96 L.Ed.2d at 79–80.

The magistrate ruled that the prison regulation against contracting or publishing for profit was rationally related to the IDOC's interest in preventing criminal activity among inmates and free citizens. The magistrate explained that Freeman was free to seek publication for profit through a family member and the family member could hold the funds in trust for Freeman, but Freeman himself was prohibited from marketing his poetry from prison.

■ Applying the *Turner* standard to the inmate business prohibition, we note that the IDOC has a legitimate interest in halting and preventing criminal activity and economic exploitation by and among inmates. Prohibiting inmates from conducting business does limit the opportunity for inmates to exploit and defraud others and, therefore, as the magistrate correctly concluded, the regulation is rationally related to a legitimate governmental goal. Regarding alternative means of exercising his First Amendment right, Freeman has been told by the IDOC that, while he personally is not permitted to market his poems, he is free to execute a release or power of attorney so that someone else, outside of prison, can do so for him. We hold this policy to be constitutionally reasonable and consistent with Idaho law. Thus, alternative means remain available for Freeman to exercise his constitutional right of free speech, assuming such a commercial market even exists.

■ Regarding the impact of accommodation on guards, inmates and finite prison resources, Warden Wright testified that the inmate business prohibition was the most efficient means of dealing with the problems arising from inmate business activity. Warden Wright testified that the burden of supervising inmate business activity would be

"astronomical," seriously taxing the limited manpower resources available to the prison. "Courts should be particularly deferential to the informed discretion of corrections officials." *Turner*, 482 U.S. at 90, 107 S.Ct. at 2262, 96 L.Ed.2d at 80. Correctional authorities are in the best position to allocate labor to maintain a safe and functioning prison with the limited resources available. Therefore, we conclude, as did the magistrate, that the prohibition of doing business promotes a legitimate governmental interest, and that case-by-case examination of each inmate's business activity would place a tremendous burden on the prison system, necessitating much greater censorship of inmate communications along with deeper examination and administration of inmate accounts than presently conducted. Finally, noting that prison regulations need not pass the "least restrictive means" test, we hold that the inmate business prohibition is not an exaggerated response to prison concerns. *Id.*

Applying the *Turner* factors to Freeman's case, we conclude, as did the magistrate, that the IDOC's regulatory prohibition on inmate business activity is reasonably related to legitimate prison security interests. The magistrate's order denying Freeman's petition for a writ of habeas corpus is affirmed.

## IV.

### OTHER ISSUES RAISED ON APPEAL

 Freeman asserts that he has standing to raise a constitutional attack on Idaho Code §§ 11–108, 20–209E, 31–3212, and 31–3220A, on the basis that other inmates have been frightened away from litigation by the threat of having to pay for the opposing party's attorney's fees and costs of litigation. To satisfy the requirement of standing, Freeman was required to have alleged or demonstrated an injury in fact and a substantial likelihood that the judicial relief requested will prevent or redress the claimed injury. *See Miles v. Idaho Power Co.*, 116 Idaho 635, 640–42, 778 P.2d 757, 762–64 (1989). Freeman has not alleged or demonstrated any such injury. His constitutional claims are theoretical at best. The magistrate correctly dismissed these claims for lack of standing. *See Bowles v. Pro Indiviso, Inc.*, 132 Idaho 371, 375, 973 P.2d 142, 146 (1999).

## V.

### CONCLUSION

The magistrate's order denying Freeman's petition for a writ of habeas corpus is affirmed. No costs or fees on appeal allowed.

Chief Judge PERRY and Judge LANSING concur.