71 P.3d 471

**Robert D. FREEMAN, Petitioner– Appellant,**

**v.**

**IDAHO DEPARTMENT OF CORRECTION, State of Idaho, Defendant.**

No. 27502.

Court of Appeals of Idaho.

May 23, 2003.

Robert D. Freeman, Boise, pro se appellant.

Hon. Lawrence G. Wasden, Attorney General; Timothy R. McNeese, Deputy Attorney General, Boise, for respondent.

GUTIERREZ, Judge.

Robert D. Freeman appeals from the dismissal of his *pro se* petition for writ of *habeas corpus*. We dismiss because his claims are moot.

## I.

## FACTUAL AND PROCEDURAL SUMMARY

On April 29, 1998, Freeman, an inmate incarcerated at the Southern Idaho Correctional Institution, arrived at an evening music function in the prison's visiting room. Inmate Rogers advised Freeman that Valverde, another inmate who was to assist with the ongoing sound equipment checks, had not arrived. Freeman asked Officer Berry for permission to leave the room, retrieve Valverde, and then return to the music function. Berry denied Freeman's request and advised him of the visiting room's unwritten "no return" rule. After motioning to Sergeant James, Berry asked James if Freeman could go get Valverde and return to the visiting room. James answered in the negative and repeated the "no return" rule, advising Freeman that he could choose to leave the function and not return, or to remain in the visiting room. In the continuing dialogue with James, Freeman referred to a threat of a lawsuit if he was not allowed to leave for

"pill call."[1] Freeman later testified that he considered his statement to be in jest.

James left the visiting room and, returning a few minutes later, issued a disciplinary offense report (DOR) to Freeman for threatening to sue James. The DOR alleged that Freeman had violated code O–2U, a Class A disciplinary offense which prohibits "individual disruptive behavior [by] involvement in any disorderly conduct by impeding, preventing, or attempting to impede or prevent any official duties, business, or action." Class A is the most serious disciplinary offense category.[2] James later acknowledged that inmates often threaten him with litigation and that he does not issue DORs for those threats.

Freeman requested a DOR hearing and made several requests for statements from four civilian witnesses. Hearing Officer Baird denied Freeman's requests for civilian witness statements. After a hearing, Baird pronounced Freeman guilty of violating code O–2U. Baird concluded that Freeman's statements constituted "some evidence that it was a threat." Baird explained to Freeman, "There's [sic] things you can and cannot say to us. We don't interpret it the same way you do."

Baird imposed two disciplinary sanctions: fifteen days of segregation, which was suspended and for which Freeman was placed on sixty days probation, and a nine-month transfer to another minimum security dormitory. Freeman apparently neither made similarly offensive statements nor received another DOR during the suspension period and consequently did not serve the segregation time sanction.

Following an unsuccessful administrative appeal, Freeman filed a *habeas corpus* petition on August 6, 1998, alleging constitutional violations that the IDOC retaliated for his exercise of free speech by issuing the DOR; that he had no knowledge or notice of the rule on which the DOR was based; that the

---

1. The term "pill call" refers to the appointed time and location for dispensing medication to the inmates.

2. There are four classes of disciplinary offenses ranging from the most serious being categorized as Class A offenses to the least serious being

assigned to Class D. As a comparison to the code under which Freeman was charged, code 11D, *i.e.*, "words, actions or gestures designed or intended to harass or intimidate staff, visitors or public," is a Class B offense.

DOR hearing violated his due process rights; and that he was denied meaningful access to the courts. Freeman also requested appointed counsel, which was denied. The state filed a motion for summary judgment. The magistrate granted the state's motion, but then rescinded that decision to consider whether Freeman had suffered due process injury from the denial of witnesses at his DOR hearing. Freeman also moved for summary judgment. The magistrate again granted the state's motion for summary judgment. Freeman filed an intermediate appeal with the district court, which affirmed the magistrate's ruling and later denied Freeman's motion to reconsider. Freeman timely appeals.

## II.

### ANALYSIS

■ Upon review of an intermediate appellate decision by the district court, we examine the magistrate's record of proceedings and decision independently, but with due regard for the district court's analysis. *Martin v. Spalding*, 133 Idaho 469, 471, 988 P.2d 695, 697 (Ct.App.1998). A petition for a writ of *habeas corpus*, being a pleading analogous to a complaint, is governed by the Idaho Rules of Civil Procedure. *Freeman v. State Dep't of Corr.*, 115 Idaho 78, 79, 764 P.2d 445, 446 (Ct.App.1988). Bound by the same standard of review as the trial court, we examine the record to determine whether there remains any genuine issue of material fact, and absent such issues, whether the moving party was entitled to judgment as a matter of law. I.R.C.P. 56(c); *Martin*, 133 Idaho at 471, 988 P.2d at 697. We liberally construe the facts contained in the record and all reasonable inferences based thereupon in favor of the opposing party. *See Martin*, 133 Idaho at 471, 988 P.2d at 697. Unless controverted, however, the allegations contained in a *habeas corpus* petition must be treated as true when considering whether that writ will issue. *Gawron v. Roberts*, 113 Idaho 330, 332, 743 P.2d 983, 985 (Ct.App.1987).

On appeal, Freeman raises the issue of whether the state issued its DOR against him in retaliation for his spoken threat of litigation. Freeman also raises the issues as to whether: (1) inmates have a constitutional right to say that they are going to sue prison staff; (2) inmates have the right to call witnesses for DOR hearings, especially in alleged retaliations; (3) inmates' speech may be sanctioned under *ex post facto* or constitutionally vague rules; and (4) indigent inmates have been denied their constitutional right to meaningful court access where they have been denied appointed counsel and denied access to legal materials and aid from persons trained in the law. Shortly after filing his reply brief in the instant appeal, Freeman completed his sentences and was released from prison. Thus, we first must consider whether Freeman's issues have been rendered moot by his unconditional release.

■ The general rule of mootness doctrine is that, to be justiciable, an issue must present a real and substantial controversy that is capable of being concluded through a judicial decree of specific relief. *Idaho Sch. for Equal Educ. Opportunity v. Idaho State Bd. of Educ.*, 128 Idaho 276, 281–82, 912 P.2d 644, 649–50 (1996). Furthermore, the controversy must be live at the time of the court's hearing. *Id.* at 282, 912 P.2d at 650. If, however, the issues presented are no longer live and if the parties lack a legally cognizable interest in the outcome, those issues are not justiciable, but are moot and thereby preclude review. *Id.* at 281, 912 P.2d at 649. A party lacks a legally cognizable interest in the outcome when even a favorable judicial decision would not result in relief. *See Murphy v. Hunt*, 455 U.S. 478, 481–82, 102 S.Ct. 1181, 1183, 71 L.Ed.2d 353, 356–57 (1982).

■ An otherwise moot issue, however, remains justiciable if it falls within one of three recognized exceptions to the application of mootness doctrine. First, a mootness exception applies where the challenged conduct persists in causing collateral legal consequences for the challenger. *Butler v. State*, 129 Idaho 899, 900–01, 935 P.2d 162, 163–64 (1997); *State v. Alldredge*, 96 Idaho 7, 8, 523 P.2d 824, 825 (1974); *Adams v. Killeen*, 115 Idaho 1034, 1035, 772 P.2d 241, 242 (Ct.App. 1989); *Russell v. Fortney*, 111 Idaho 181, 183, 722 P.2d 490, 492 (Ct.App.1986). Sec-

ond, an exception exists where the challenged conduct is likely to evade judicial review and thus is capable of repetition. *Idaho Sch. for Equal Educ. Opportunity,* 128 Idaho at 283–84, 912 P.2d at 651–52; *Mallery v. Lewis,* 106 Idaho 227, 234, 678 P.2d 19, 26 (1983). In considering this "evasive of review" exception, the Court does not limit its consideration of the recurrence element to the individual challenger, but may look to others who are or will be in a similar position. *See, e.g., Mallery,* 106 Idaho at 234, 678 P.2d at 26. Third, an exception applies where an otherwise moot issue raises concerns of substantial public interest. *E.g., Idaho Sch. for Equal Educ. Opportunity,* 128 Idaho at 284, 912 P.2d at 652; *Bradshaw v. State,* 120 Idaho 429, 432, 816 P.2d 986, 989 (1991); *Dick v. Geist,* 107 Idaho 931, 933–35, 693 P.2d 1133, 1135–37 (Ct.App.1985).

■ Because Freeman has been released from prison, the mootness doctrine typically would bar his issues as no longer justiciable because even our favorable decision on the matter could not produce any relief for him. *See Murphy v. Hunt,* 455 U.S. 478, 481–82, 102 S.Ct. 1181, 1183, 71 L.Ed.2d 353, 356–57 (1982). We, however, must consider whether any mootness exceptions apply.

■ We consider first whether Freeman's claim of a First Amendment violation is a type of issue that is likely to evade review if it is deemed moot here. At the time of the magistrate's and district court's decisions in the instant case, no prisoner First Amendment cases in Idaho and almost none elsewhere addressed a prison's imposition of restriction upon the content of an inmate's speech. *Cf. Freeman v. State, Dep't of Corr.,* 134 Idaho 481, 485, 4 P.3d 1132, 1136 (Ct.App.2000) (upholding prison rule restricting inmate business transactions involving publication of inmate's poetry); *Wilson v. State,* 113 Idaho 563, 564–65, 746 P.2d 1022, 1023–24 (Ct.App.1987) (upholding hair policy as permissible restriction on expression). After this appeal was filed, however, the United States Court of Appeals for the Ninth Circuit decided *Hargis v. Foster,* 312 F.3d 404 (9th Cir.2002), which involved a First Amendment challenge brought by an Idaho prisoner against the IDOC's punishment of

his speech. The *Hargis* case demonstrates that such claims will not necessarily evade review because collateral consequences for parole consideration can prevent claims based on unlawful DOR proceedings from becoming moot.

In Hargis' case, he suffered from a neurological condition that caused his head to jerk and twist uncontrollably. At the time of the relevant events, Hargis had litigation pending on a petition for writ of *habeas corpus* that he had filed in an effort to obtain medical treatment for that condition. A guard commanded Hargis to shave pursuant to the IDOC's regulation requiring male prisoners to do so daily. Hargis attempted to comply, but stopped mid-shave after his head, twisting and jerking, caused him to cut his face. The guard warned Hargis that if he did not shave he would receive a DOR. Later that day, the guard confronted Hargis about his still only half-shaven face, whereupon Hargis unsuccessfully tried to explain his unmedicated medical condition and requested the use of an electric razor so as to safely comply with the shaving regulation. The guard refused Hargis' request to speak with medical personnel or with a supervisor who earlier had allowed him to use an electric razor. Hargis then informed the guard of the pending litigation by which he hoped to obtain medication and, requesting patience and understanding, asked if the guard could wait to enforce the regulation until that matter was resolved. Again, the guard refused.

At that point, Hargis advised the guard that the guard's statements or actions could be brought up during that litigation. The guard asked if Hargis was attempting to challenge his authority. Hargis answered in the negative, stating that he was merely informing the guard that his conduct might be subject to judicial review. After this discussion with the guard, Hargis submitted a concern form. Later that night, however, Hargis received a DOR for a Class A disciplinary offense of coercion, and not for a Class D offense of failure to shave.

After an unsuccessful DOR hearing and appeal, Hargis received a sanction of fifteen days in disciplinary segregation. The sanction was suspended for ninety days, however,

and Hargis did not serve any segregation time. The IDOC later denied Hargis parole due to the presence of the Class A DOR on his record. Hargis filed a civil rights action in federal district court seeking relief from the IDOC's infringement of his First Amendment and other rights. The district court thereafter granted summary judgment and dismissed Hargis' free speech claim.

Because Hargis conceded that the coercion regulation was not unconstitutional under *Turner v. Safley*, 482 U.S. 78, 89, 107 S.Ct. 2254, 2262, 96 L.Ed.2d 64, 78 (1987),[3] the Court did not examine the constitutionality of that regulation as written. Rather, the key issue for the Court was whether the regulation, as it had been applied to Hargis, passed constitutional muster under *Turner* where Hargis had asserted that his speech was not coercive. This as-applied analysis in a case dismissed on summary judgment required the Court to determine if a genuine issue of material fact existed as to whether Hargis' statements implicated any legitimate prison security concerns. *Hargis*, 312 F.3d at 410. The Court concluded that such a genuine issue did exist because Hargis' statements, when taken within their full context, may not have constituted an attempt to coerce the guard to forego enforcement of the shaving regulation, and because IDOC officials had stated that they were not threatened by his statements. *Id.* at 411. The Court further concluded that a reasonable jury could conclude that the IDOC's response in issuing a coercion DOR may have constituted an exaggerated response to Hargis' statements, which posed a *de minimus* security concern at most. *Id.* On this basis, the Court reversed the dismissal of Hargis' free speech claim and remanded the matter for further proceedings. *Id.* at 412.

The *Hargis* case shows that the "evasive of review" mootness exception need not be applied to Freeman's First Amendment claim or his other claims based upon the DOR proceedings because for many inmates the DORs' potential impact upon their requests

for parole will prevent the claim from becoming moot.

Freeman's remaining claims and the remaining mootness exceptions can be quickly disposed of. The collateral legal consequences exception does not apply to Freeman because none of the challenged conduct continues to impact upon him. Further, even if Freeman's allegation of constitutional violations involving inmates' meaningful court access issue were deemed to be of substantial public interest, the number of such claims that reach the courts render it unlikely that recurrences of denied meaningful court access will escape judicial review. *See generally, e.g., Lewis v. Casey*, 518 U.S. 343, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996); *Bounds v. Smith*, 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977); *Gluth v. Kangas*, 951 F.2d 1504 (9th Cir.1991); *Lindquist v. Idaho State Bd. of Corr.*, 776 F.2d 851 (9th Cir. 1985); *Coleman v. State*, 114 Idaho 901, 762 P.2d 814 (1988); *Coffelt v. State*, 92 Idaho 235, 440 P.2d 355 (1968); *State v. Brandt*, 135 Idaho 205, 16 P.3d 302 (Ct.App.2000).

## III.

### CONCLUSION

In view of Freeman's unconditional release, we conclude that his issues on appeal are moot, and thus we dismiss the appeal.

Chief Judge LANSING and Judge PERRY concur.

---

3. *Turner v. Safley*, 482 U.S. 78, 89, 107 S.Ct. 2254, 2262, 96 L.Ed.2d 64, 78 (1987), established the reasonableness standard by which to judge the constitutional sufficiency of the procedures by which inmates' First Amendment rights are restricted, and Idaho has followed that standard. *Evensiosky v. State*, 136 Idaho 189, 191, 30 P.3d 967, 969 (2001); *Sanchez v. Arave*, 120 Idaho 321, 327, 815 P.2d 1061, 1067 (1991).