IN THE COURT OF APPEALS OF THE STATE OF IDAHO
Docket No. 36859

| RAYMOND WATKINS, | ) | 2010 Unpublished Opinion No. 551 |
|---|---|---|
| | ) | |
| Petitioner-Appellant, | ) | Filed: July 14, 2010 |
| | ) | |
| v. | ) | Stephen W. Kenyon, Clerk |
| | ) | |
| WARDEN HARDISON; OLIVIA CRAVEN, | ) | THIS IS AN UNPUBLISHED |
| | ) | OPINION AND SHALL NOT |
| Respondents. | ) | BE CITED AS AUTHORITY |
| | ) | |

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County. Hon. Daniel C. Hurlbutt, District Judge.

Order of the district court dismissing petition for writ of habeas corpus, <u>affirmed</u>.

Raymond Watkins, Boise, pro se appellant.

Hon. Lawrence G. Wasden, Attorney General; William M. Loomis, Deputy Attorney General, Boise, for respondents.

_____

GUTIERREZ, Judge

Raymond Watkins appeals from the district court's order dismissing his petition for writ of habeas corpus. Specifically, Watkins contends the district court erred in not appointing counsel to assist him and in granting the Respondents Warden Hardison and Olivia Craven's summary judgment motion. We affirm.

## I.

## FACTS AND PROCEDURE

In November 1999, Watkins was given a unified sentence of fifteen years with three years determinate upon his conviction for lewd and lascivious conduct with a minor under sixteen. His first parole hearing was held in June 2002, after which the Idaho Commission of Pardons and Parole ("Commission") denied Watkins parole and "passed" him to his full-term release date of November 2014. Among other things, the Commission cited Watkins' long

1

history of inappropriate sexual and criminal behaviors, "poor history of community supervision," and his "lack of any sex offender programming" as reasons for denial of parole.[1]

In 2003, Watkins submitted a self-initiated progress report (SIPR)[2] which the Commission denied, again mentioning Watkins' criminal and sexual crimes history and stating that he had been offending against children "over a very long period of time" and was considered "a very high risk to re-offend." Watkins submitted a second SIPR in 2005, which the Commission likewise denied, again noting his long criminal history, the fact that during his initial parole hearing the Commission had been concerned that Watkins had not attended sex offender programming, and concluding there had been "no significant change" since his last review.

At some point following the Commission's first denial of parole, Watkins attempted to enroll in a class for sex offenders, but was not successful in gaining admittance. In 2004, he was

---

[1]  Specifically in reference to sexual offender treatment, the report states:

Mr. Watkins has failed to take the initiative to attempt to attend any sex offender programming while being incarcerated, yet it has been available to him.
> . . . .

The subject says he has not taken sex offender classes and he says his counselor never got him into the classes. He gave the officer a kite to prove that he did ask for the class. (Commissioner Sandy notes the paperwork does not reflect his statements.).
> . . . .

He says he never went to sex offender classes because his counselor never helped him get into a class. He thinks he needs to attend the class. Commissioner Sandy says he is saying one thing today and has said something different to his counselor. He has shown no ambition to attend any classes.

Subject says he will get into classes right away.

Commissioner Dressen asks the subject how, after all the years of offending, he has never attended sex offender classes. She doesn't believe he has never been ordered to attend any of these programs. He says he thinks he has tried to do all he can and feels like the counselors were supposed to help him more then [sic] they did. He then said one of the reasons he has not pursued the class is because he doesn't want the other inmates to know what his crime was.

[2]  The self-initiated progress report is an application requesting that the Commission reconsider, prior to the next scheduled hearing, a decision already made denying an inmate's parole. IDAPA 50.01.01.500.01.

2

placed on a waiting list for the S.A.N.E. sexual offender treatment class. In January 2008, he filed a third SIPR. Before the Commission could respond, in March 2008, Watkins filed a motion for appointment of counsel to assist him in filing a petition for writ of habeas corpus, which the district court denied. In April 2008, the Commission responded to Watkins' third SIPR, stating:

> The Commission notes that subject will complete his sentence in November 2014. [Watkins'] sexual offending has been a life-time [sic] for him. However, the Commission is not certain they want him released without supervision to monitor his behavior and have him in treatment. They elect to grant a hearing in 10/2012 to consider parole [of] the last part of his sentence. He is to get into the SANE treatment program prior to this hearing. . . .

On April 21, 2008, Watkins filed a petition for writ of habeas corpus alleging that his rights were violated and the Commission exceeded its discretion by requiring sex offender treatment that was not immediately available to him. The Respondents filed a motion for a more definite statement, which the district court granted. Watkins filed a response to the order for a more definite statement and, on the same day, filed a motion for summary judgment. The Respondents filed a response and moved to dismiss the petition on the basis that Watkins had not provided a more definite statement, had not shown exhaustion of administrative remedies, and had not shown that he was an applicant or eligible for medical parole under Idaho Code § 20-223(f). The district court issued an order requesting supplemental briefing on two of Watkins' claims: (1) that the Commission had violated the separation of powers by denying him parole and requiring completion of sex offender program that is not available to him until he is two years from finishing his sentence; and (2) whether the above situation resulted in a violation of the Eighth Amendment's prohibition of cruel and unusual punishment. The parties complied and the district court entered an order dismissing Watkins' petition for writ of habeas corpus. Watkins appeals.

## II.

## ANALYSIS

### A.     Denial of Counsel

On appeal, Watkins contends that the district court erred in not appointing him counsel to assist in his habeas corpus petition.

3

There is no statutory basis for appointing counsel in a habeas corpus proceeding. *Quinlan v. Idaho Com'n for Pardons and Parole*, 138 Idaho 726, 729-30, 69 P.3d 146, 149-50 (2003); *Dopp v. Idaho Com'n for Pardons and Parole*, 144 Idaho 402, 405, 162 P.3d 781, 784 (Ct. App. 2007). Nor does the Sixth Amendment right to counsel in criminal proceedings apply in this case. Because habeas corpus actions are civil in nature, the Sixth Amendment right to counsel does not attach. *Id. See also Wilbanks v. State*, 91 Idaho 608, 610, 428 P.2d 527, 529 (1967); *Freeman v. State*, 87 Idaho 170, 180, 392 P.2d 542, 548 (1964). This Court noted in *Dopp*, however, that there is some suggestion in *Wilbanks*, 91 Idaho at 611, 428 P.2d at 530, and *Freeman*, 87 Idaho at 180, 392 P.2d at 548, that in special circumstances, the Due Process Clause could require appointment of counsel. *Dopp*, 144 Idaho at 405, 162 P.3d at 784. We then concluded that no extraordinary circumstances existed in *Dopp* such that the absence of appointed counsel violated Dopp's due process rights. *Id.* Specifically, we noted that because the only factual issue for resolution had been conceded by the state and the only legal issues turned upon the interpretation of the language of a single statute, this case was not "unusually complex or too challenging for a pro se presentation." *Id.*

In denying Watkins' request for appointment of counsel, the district court stated:

> Petitioner herein has not show any special circumstances necessitating the services of an attorney herein and has not offered any authority or basis for appointment of counsel. The Court is, thus far, able to understand the nature of Petitioner's pleadings, claims, and arguments. Thus, it does not appear that Petitioner will be denied a fair and meaningful consideration of his Petition if counsel is not appointed.

We agree with the district court that no special circumstances were present such that Watkins' due process rights required appointment of counsel. The record indicates that the district court invested considerable effort in sorting out the issues presented in Watkins' habeas petition in an effort to understand and evaluate them. Further, the facts applicable were not particularly complex, with the crux of the petition depending on Watkins' right to sex offender treatment immediately upon request which the district court thoroughly addressed. Therefore, we conclude that the district court did not err in denying Watkins' request for appointment of counsel.

## B.    Habeas Petition

Watkins also contends that the district court erred in dismissing his petition for a writ of habeas corpus. Whether to issue a writ of habeas corpus is a matter within the discretion of the trial court. *Johnson v. State*, 85 Idaho 123, 127, 376 P.2d 704, 706 (1962); *Dopp v. Idaho Com'n of Pardons and Parole*, 139 Idaho 657, 659, 84 P.3d 593, 595 (Ct. App. 2004). When reviewing an exercise of discretion in a habeas corpus proceeding, the appellate court conducts a multi-tiered inquiry to determine: (1) whether the lower court rightly perceived the issue as one of discretion; (2) whether the court acted within the outer boundaries of such discretion and consistently with any legal standards applicable to specific choices; and (3) whether the court reached its decision by an exercise of reason. *Duvalt v. Sonnen*, 137 Idaho 548, 551-52, 50 P.3d 1043, 1046-47 (Ct. App. 2002). If a petitioner is not entitled to relief on an application for a writ of habeas corpus, the decision by the petitioned court to dismiss the application without an evidentiary hearing will be upheld. *Dopp*, 139 Idaho at 660, 84 P.3d at 596. When a court considers matters outside the pleadings on an I.R.C.P. 12(b)(6) motion to dismiss, such motion must be treated as a motion for summary judgment. *Id.*; *Hellickson v. Jenkins*, 118 Idaho 273, 276, 796 P.2d 150, 153 (Ct. App. 1990).

When considering a ruling on a motion for summary judgment, this Court's standard of review is the same as that used by the trial court in ruling on the motion. *Quinlan*, 138 Idaho at 729, 69 P.3d at 149; *Barnes v. Barnes*, 135 Idaho 103, 105, 15 P.3d 816, 818 (2000). This Court must liberally construe the facts in favor of the nonmoving party and determine whether there is a genuine issue as to any material fact, and whether the moving party is entitled to judgment as a matter of law. I.R.C.P. 56(c). In making this determination, all allegations of fact in the record, and all reasonable inferences from the record are construed in the light most favorable to the party opposing the motion. *Thomson v. City of Lewiston*, 137 Idaho 473, 476, 50 P.3d 488, 491 (2002). The burden of proving the absence of material facts is upon the moving party. *Id.* Once the moving party establishes the absence of a genuine issue, the burden shifts to the nonmoving party to show that a genuine issue of material fact on the challenged element of the claim does exist. The nonmoving party may not rest upon the mere allegations or denials contained in the pleadings, but must come forward and produce evidence by affidavits or as otherwise provided in the rules, to set forth specific facts showing that there is a genuine issue for trial. I.R.C.P. 56(e). Failure to do so will result in an order granting summary judgment.

The overall thrust of Watkins' petition is that his rights have been violated where he was denied parole and thus subjected to an "excessive, unnecessary, and indefinite" sentence due to the "inadequate and ineffective" psychological rehabilitation treatment for sex offenders provided by the Idaho Department of Correction ("Department"). Specifically, this argument stems from the parole board's denial of his request for parole and requirement that he complete sex offender programming, a rehabilitation option not available to him until he was two years from completing the indeterminate portion of his sentence. Watkins takes several approaches in arguing that his rights were violated, each of which we address in turn.

### 1. Due process

In granting summary judgment and dismissing Watkins' habeas corpus petition, the district court characterized Watkins' due process argument as an assertion that the Commission violated his due process rights when it denied him parole. The court ruled in favor of the Respondents, citing the well-settled rule that the possibility of parole is not protected by due process and inmates have no constitutional right to due process in parole hearings. *See Drennon v. Craven*, 141 Idaho 34, 36, 105 P.3d 694, 696 (Ct. App. 2004); *Dopp*, 139 Idaho at 660-61, 84 P.3d at 596-97.

It appears, however, that Watkins' argument may be better characterized as a contention that his due process rights were violated by his *lack of access* to sex offender treatment which led to the denial of his request for parole. As the district court noted, while a defendant does not have a liberty interest in being granted parole, statutes and administrative rules governing the parole consideration process may confer protections for inmates that are enforceable in habeas corpus actions. *Id.* at 661, 84 P.3d at 597. In this sense, Watkins appears to argue that he has a right to immediate access to sex offender rehabilitation such that denial of access to rehabilitation promptly upon his request resulted in a violation of his right to due process. We address whether Watkins has a right to sex offender rehabilitation at his request such that delay in admitting him to such rehabilitation implicates a due process right.

Watkins puts forth that he is imbued with the right to treatment and rehabilitation by I.C. § 19-2523 and several federal statutes including the Americans with Disabilities Act and the Rehabilitation Act.[3]

Idaho Code § 19-2523 provides, in relevant part:

> (2) The court shall authorize treatment during the period of confinement or probation specified in the sentence if, after the sentencing hearing, it concludes by clear and convincing evidence that:
>> (a) The defendant suffers from a severe and reliably diagnosable mental illness or defect resulting in the defendant's inability to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of the law;
>> (b) Without treatment, the immediate prognosis is for major distress resulting in serious mental or physical deterioration of the defendant;
>> (c) Treatment is available for such illness or defect;
>> (d) The relative risks and benefits of treatment or nontreatment are such that a reasonable person would consent to treatment. (of the offense charged).

Watkins relies on the language "shall authorize treatment" to infer that the statute grants him a right to sexual rehabilitation and treatment immediately upon his incarceration. This Court exercises free review over the application and construction of statutes. *State v. Reyes*, 139 Idaho 502, 505, 80 P.3d 1103, 1106 (Ct. App. 2003). Where the language of a statute is plain and unambiguous, this Court must give effect to the statute as written, without engaging in statutory construction. *State v. Rhode*, 133 Idaho 459, 462, 988 P.2d 685, 688 (1999); *State v. Burnight*,

---

[3] Watkins also makes reference to Titles 39 and 66 of the Idaho Code as a basis for his alleged right to rehabilitation and treatment, however he directs us to no specific language, nor is the applicability of the titles readily apparent to the issue presented here. As such, we do not address the merits of his contention on this ground. *Powell v. Sellers*, 130 Idaho 122, 128, 937 P.2d 434, 440 (Ct. App. 1997) (holding that a party waives an issue on appeal if either argument or authority is lacking).

In addition, while Watkins seems to recognize that there is no right to sex offender treatment under Idaho Code § 20-223, he continues to cite *Balla v. Idaho State Bd. of Corrs.*, 595 F. Supp. 1558 (D. Idaho 1984) for the proposition that he is entitled to sexual offender treatment on demand. However, the federal district court's *Balla* holding in this regard was explicitly overruled by the Ninth Circuit Court of Appeals in *Balla v. Idaho State Bd. of Corrs.*, 869 F.2d 461 (9th Cir. 1989). *See State v. Hadley*, 122 Idaho 728, 731, 838 P.2d 331, 334 (Ct. App. 2002) (recognizing that in accordance with the Ninth Circuit's *Balla* decision, I.C. § 20-223 does not require treatment for incarcerated sex offenders).

132 Idaho 654, 659, 978 P.2d 214, 219 (1999); *State v. Escobar*, 134 Idaho 387, 389, 3 P.3d 65, 67 (Ct. App. 2000). The language of the statute is to be given its plain, obvious, and rational meaning. *Burnight*, 132 Idaho at 659, 978 P.2d at 219. If the language is clear and unambiguous, there is no occasion for the court to resort to legislative history or rules of statutory interpretation. *Escobar*, 134 Idaho at 389, 3 P.3d at 67. When this Court must engage in statutory construction, it has the duty to ascertain the legislative intent and give effect to that intent. *Rhode*, 133 Idaho at 462, 988 P.2d at 688. To ascertain the intent of the legislature, not only must the literal words of the statute be examined, but also the context of those words, the public policy behind the statute, and its legislative history. *Id.* It is incumbent upon a court to give a statute an interpretation which will not render it a nullity. *State v. Beard*, 135 Idaho 641, 646, 22 P.3d 116, 121 (Ct. App. 2001). Constructions of a statute that would lead to an absurd result are disfavored. *State v. Doe*, 140 Idaho 271, 275, 92 P.3d 521, 525 (2004); *State v. Yager*, 139 Idaho 680, 690, 85 P.3d 656, 666 (2004).

Watkins' reliance on this statute as creating a right to treatment on demand is misplaced. The plain language of the statute imposes a duty on the district court to authorize treatment for mental health issues--it has no bearing on what treatment must be available to offenders once incarcerated and when that treatment must be available. Further, even if we were to accept Watkins' premise that this statute entitles him to treatment while incarcerated, Watkins has not shown that he has been denied treatment--only that he was placed on a waitlist since he was considered to be in a "low priority" category due to his release date. And, as the district court found, in response to Watkins' third SIPR, submitted prior to his habeas corpus petition, the Commission scheduled Watkins a second parole hearing for approximately two years from his full-term release date, thus placing Watkins in a higher priority category for being admitted to the S.A.N.E. class which will occur prior to or "close to" the second hearing date. Thus, the record is clear that Watkins will eventually receive sex offender treatment.

Watkins also asserts that a right to treatment and rehabilitation at his request is conferred by the Americans with Disabilities Act[4] and the Rehabilitation Act of 1973.[5] However, under

---

[4] Americans with Disabilities Act of 1990 (ADA), 42 U.S.C. §§ 12101-12213 (2000).

[5] Rehabilitation Act of 1973, Pub. L. No. 93-112, 87 Stat. 355 (codified as amended in scattered sections of 15 U.S.C., 20 U.S.C., 29 U.S.C., 36 U.S.C., 41 U.S.C., and 42 U.S.C.).

both of these acts, "disability" specifically excludes his claimed "disability." In regard to the Americans with Disabilities Act, the regulation defining the term "disability" for the purposes of the act specifically excludes "[t]ransvestism, transsexualism, pedophilia, exhibitionism, voyeurism, gender identity disorders not resulting from physical impairments, or other sexual behavior disorders . . . ." 28 C.F.R. 35.104(5)(i). Similarly, the Rehabilitation Act of 1973, states that in regard to the applicable provisions of the Act, "the term 'individual with a disability' does not include an individual on the basis of . . . transvestism, transsexualism, pedophilia, exhibitionism, voyeurism, gender identity disorders not resulting from physical impairments, or other sexual behavior disorders . . . ." 29 U.S.C.A. § 705(2)(F)(i). Thus, neither statute could give rise to a right to treatment in this instance.

As Watkins has not shown that he has a right to sex offender treatment at his demand, we affirm the district court's grant of summary judgment on this claim.

### 2. Separation of powers

Watkins argues that the Commission violated the separation of powers because it essentially resentenced him by requiring completion of a sex offender program which is not available to Watkins until he is two years from finishing the indeterminate portion of his sentence. Watkins also characterizes his argument as the Commission having exceeded its discretion by violating his "plea contract" when it failed to release him on parole after he completed the determinate portion of his sentence.

The Idaho Constitution prohibits any branch of government from exercising powers that properly belong to another branch, unless the Constitution expressly so directs or permits. IDAHO CONST. art. II, § 1. The power to define crimes and prescribe penalties belongs to the legislative department whereas the authority to sentence offenders who have been found guilty of those crimes lies with the judiciary. *Spanton v. Clapp*, 78 Idaho 234, 237, 299 P.2d 1103, 1104 (1956). The pardoning power lies with the executive branch. IDAHO CONST. art. IV, § 7.

In regard to his "contract" argument, Watkins contends that the sentencing court "promised" him release upon completion of the determinate portion of his sentence. The district court determined that Watkins had not presented a genuine issue, stating:

> "[T]he determination of whether an inmate has served a commensurate amount of his sentence such that he is eligible for parole rests with the Department of Corrections, not the sentencing judge." *State v. Sherman*, 120 Idaho 464, 466, 816 P.2d 1021, 1023 (Ct. App. 1991). "To require the Parole Commission to act

9

in accordance with judicial expectations, and to use collateral attack as a mechanism for ensuring that these expectations are carried out, would substantially undermine the [legislative] decision to entrust release determinations to the Commission and not the courts." *Nickerson v. State*, 126 Idaho 818, 892 P.2d 493 (Ct. App. 1995) (quoting *United States v. Addonizio*, 442 U.S. 178, 190 (1979)). Regardless of what the sentencing court promised or expected, the authority to parole Watkins rests with the Commission. Watkins therefore fails to state a claim.

The district court's statement of the law on this issue was correct, as was its application of the law to the facts of this case in determining that regardless of what Watkins was "promised," the Commission retained discretion whether to grant parole and it did not violate the separation of powers by not doing so. Thus, we conclude that the court did not err in finding that Watkins had not presented a genuine issue in this regard.

In finding that Watkins did not state a genuine issue in regard to his argument that the Commission essentially resentenced him by requiring completion of a sex offender program that was not immediately available to him, the district court stated:

Documents from Hardison and Craven indicate that certain categories of inmates are given priority for attending the S.A.N.E. class. At the time Watkins submitted his petition to the Court, he was on a waiting list, in a low priority category. In response to Watkins' third SIPR, submitted prior to Watkins' petition to the Court, the Commission used its discretion to schedule Watkins a second parole hearing at about two years from his full term release date. Having this parole hearing date places Watkins in a category of higher priority for the S.A.N.E. class. Prior to, and maybe close to, that hearing date, Watkins will be admitted to the program. Just as before his first parole hearing, Watkins will again have the opportunity to take the S.A.N.E. class.

The decision to have a parole hearing about two years from Watkins' full term release date properly sat with the Commission and did not violate the separation of powers. Nor did the denial of parole and setting of a later parole hearing date create a new sentence where it simply requires Watkins to serve more of the indeterminate portion of his sentence under incarceration.

Watkins' argument is based on the premise that the Commission is completely denying him the possibility of parole by imposing an impossible condition upon him. As the district court noted, however, such is not the case. As the affidavit of Kevin Butler, the Parole Coordinator for the Department, established, because of necessity of limited class sizes, the Department must prioritize sex offender class participation. As Butler stated, "the bottom line is that because of limited resources, not every inmate for whom sex offender [treatment] was

10

recommended can attend classes *whenever the inmate wants*.  The Department must prioritize and tries to ensure that those inmates whose parole hearings are coming sooner rather than later (or for whom the Commission has already given a [tentative parole date]) receive priority." (Emphasis added.)  Thus, Butler noted, since Watkins had been scheduled for a hearing in October 2012, with the directive that he attend a S.A.N.E. program, other inmates with hearings or tentative parole dates before his will be given priority, but he will receive the recommended programming prior to the date of his scheduled hearing.  Thus, it is evident from the record that the Commission's requirement that Watkins complete sex offender programming before being released on parole has not entirely denied him the possibility of parole.

In addition, his failure to have completed sex offender programming was but one of several reasons the Commission denied parole and his two subsequent SIPR's.  As we discussed above, the Commission stated that it had concerns Watkins was a high risk to reoffend given that he had engaged in inappropriate sexual behavior over a period of several years, including previous sexual incidents with minors in 1970 and 1985, that he had shown a lack of initiative to enroll in sexual offender programming (which we note was supported by Watkins' comment to the Commission that he had not enrolled in such treatment based, at least in part, on his reluctance for fellow inmates to know the basis of his conviction), his continual criminal behavior dating back to 1945, and his proven poor history of behavior while on community supervision.  As we discussed above, the determination of whether an inmate has served a commensurate amount of his sentence such that he is eligible for parole rests with the Department of Correction.  It is evident from the record that the Commission exercised this discretion by taking several factors into consideration--including, but not limited to, Watkins' failure to have completed sexual offender programming--in deciding not to grant parole.  Such is not a "resentencing," but a proper exercise of the discretion granted to the Commission.

Because the Commission did not violate the separation of powers by encroaching on an alleged "promise" by the district court or by essentially "resentencing" Watkins by requiring him to attend sex offender treatment prior to release on parole, we conclude that the district court did not err in granting summary judgment to the Respondents in regard to his separation of powers claim.

4.      **Eighth Amendment**

11

Watkins also contends that he presented a genuine issue that his rights under the Eighth Amendment's prohibition of cruel and unusual punishment were violated by the imposition of a condition of parole that cannot be met--namely that he complete sex offender treatment which he was denied entry to.

The district court determined that this issue was moot, stating:

> Following the submission of Watkins' petition to the Court, the Commission gave Watkins a second hearing date--scheduled to be held in October 2012, about two years from his full term release date. Documents provided by Hardison and Craven indicate that this hearing date increases Watkins' position of priority for admittance into the S.A.N.E. program and that Watkins will be able to take the class before the parole hearing. Accordingly, Watkins does not show a genuine issue of material fact as to whether the parole process is subjecting him to cruel and unusual punishment.

To be justiciable, an issue must present a real and substantial controversy that is capable of being concluded through a judicial decree of specific relief. *Freeman v. Idaho Dep't of Correction*, 138 Idaho 872, 875, 71 P.3d 471, 474 (Ct. App. 2003). If the questions presented are no longer live and if the parties lack a legally cognizable interest in the outcome, those issues are not justiciable, but are moot and therefore preclude review. *Id*. A party lacks a legally cognizable interest in the outcome when even a favorable judicial decision would not result in relief. *Id*. *See also Murphy v. Hunt*, 455 U.S. 478, 481-82 (1982).

Here, we agree with the district court that the issue is moot since Watkins had been given a 2012 hearing date and is now eligible to move up in the priority list for admittance into the S.A.N.E. program and will receive that programming prior to the 2012 hearing date--two years short of his full-term sentence date. Therefore, we conclude that the district court did not err in granting the Respondents' summary judgment on the Eighth Amendment claim.

### 5.    Imminent danger

On appeal, Watkins classifies sex offender treatment as "medical care" and contends that the delay in his receiving this treatment subjected him to "imminent danger." Presumably, the "imminent danger" to which Watkins refers is in reference to I.C. § 19-4206 which provides that unless an inmate petitioner establishes that he is in imminent danger of serious physical injury, he may not file a writ of habeas corpus "until all available administrative remedies have been exhausted." However, we need not address the administrative exhaustion issue, because even if

Watkins showed that he could properly raise the issue in his habeas petition, he would not be entitled to relief.

The appropriate inquiry when an inmate alleges that prison officials failed to attend to a serious medical need is whether the officials exhibited deliberate indifference. *Hudson v. McMillian*, 503 U.S. 1, 5 (1992); *Duvalt*, 137 Idaho at 552, 50 P.3d at 1047; *Clemens v. State*, 112 Idaho 638, 639, 733 P.2d at 1263, 1264 (Ct. App. 1987). A determination of deliberate indifference involves an examination of two elements: the seriousness of the prisoner's medical need and the nature of the prison's response to that need. *See United States ex rel. Walker v. Fayette County, Pennsylvania*, 599 F.2d 573, 575 (3d Cir. 1979). Serious medical needs include those diagnosed by a physician as mandating treatment or those that are so obvious even a lay person would easily recognize the necessity for a doctor's attention. *Duvalt*, 137 Idaho at 552, 50 P.3d at 1047.

To establish deliberate indifference in a prison's response to an inmate's serious medical need, there must have been a purposeful act or failure to act on the part of prison officials. *Estelle v. Gambel*, 429 U.S. 97, 103-04 (1976); *Duvalt*, 137 Idaho at 552, 50 P.3d at 1047. Although an inmate is not constitutionally guaranteed treatment at the level demanded by him or her, *State v. Clay*, 124 Idaho 329, 332, 859 P.2d 365, 368 (Ct. App. 1993), the failure to respond to a known medical problem can constitute deliberate indifference. *See Estelle*, 429 U.S. at 103-04; *Rogers v. Evans*, 792 F.2d 1052, 1058 (11th Cir. 1986). Deliberate indifference may also be manifested by intentional delay in access to medical care or by intentional interference with a prisoner's treatment once prescribed. *Estelle*, 429 U.S. at 104-05; *Duvalt*, 137 Idaho at 552, 50 P.3d at 1047. In order to establish deliberate indifference, however, a petitioner must demonstrate that his or her claim is based on more than a disagreement with the treating physician regarding the appropriateness of professional treatment received. *Duvalt*, 137 Idaho at 553, 50 P.3d at 1048; *Clemens*, 112 Idaho at 639-40, 733 P.2d at 1264-65.

First, we note that Watkins does not cite any relevant authority supporting his contention that his status as a sexual offender constitutes a "medical need" and that sexual offender rehabilitation treatment qualifies as "medical care." He seems to rely on *Balla v. Idaho State Bd. of Corrections*, 595 F. Supp. 1558 (D. Idaho 1984), for this proposition, citing its holding that a sexual offender's indeterminate sentence is not for punishment, but rehabilitative purposes. However, as we indicated above, this case was overruled by the Ninth Circuit, which explicitly

rejected the federal district court's characterization of the indeterminate portion of the sentence as rehabilitative as an incorrect interpretation of Idaho's statutory sentencing scheme. *See Balla v. Idaho State Bd. of Corrections*, 869 F.2d 461 (9th Cir. 1989). Nor are we aware of any other authority which would support Watkins' assertion that being a sex offender qualifies as a medical condition.

Furthermore, even if Watkins had shown that his status qualified as a medical need, he has not shown "deliberate indifference" on the part of IDOC. As we discussed above, the affidavits submitted by the Respondents indicate that IDOC does not categorically refuse to offer sex offenders rehabilitative treatment--rather, due to resource limitations, it is forced to prioritize which inmates receive such treatment at any given time. Thus, Watkins has not shown a genuine issue as to deprivation of medical care and the district court did not err in granting the Respondents' summary judgment on this claim.

### III.

### CONCLUSION

The district court did not err in denying Watkins' request for appointment of counsel to assist him in filing a petition for writ of habeas corpus, because there were no special circumstances present implicating due process requirements. Nor did the district court err in granting the Respondents' motion for summary judgment and dismissing Watkins' petition for habeas corpus. Specifically, Watkins did not present a genuine issue as to his contentions that his due process rights were violated by his lack of access to sexual offender treatment, that the Commission violated the separation of powers by requiring that he participate in sex offender treatment before being granted parole or encroaching on an alleged "promise" made to him by the district court that he would be paroled after serving the determinate portion of his sentence, and that the Commission's treatment requirement violated the Eight Amendment. Further, he did not present a genuine issue that denial of access to sex offender treatment at his request amounted to a denial of medical care which placed him in imminent danger. For these reasons, we affirm the district court's grant of summary judgment in favor of the Respondents and dismissal of Watkins' petition for writ of habeas corpus. No costs or attorney fees are awarded on appeal.

Judge GRATTON and Judge MELANSON **CONCUR.**

14